·(9 Misc. Rep. 193.)

## CITY OF BROOKLYN v. FUREY.

### (City Court of Brooklyn, Special Term.　June, 1894.)

1. MUNICIPAL CORPORATIONS—FIRE LIMITS—POWER OF COUNCIL.
   The common council of Brooklyn, whose only authority under the city charter (Laws 1888, c. 583, tit. 14, § 3) in regard to the fire limits is to extend them, cannot grant a permit to erect a frame structure within the established fire limits.

2. SAME—GENERAL WELFARE.
   A general clause in a city charter authorizing the common council to pass ordinances for the general welfare does not authorize it to pass an ordinance contrary to the express provisions of the charter.

3. SAME—EFFECT OF ILLEGAL PERMIT.
   One who, under a permit illegally granted by city officers, constructs a building on his own land, cannot, by lapse of time, acquire a vested right to maintain the same, as he never had any right to vest.

4. SAME—DISCRIMINATION.
   A permit by a common council to erect a frame structure within the fire limits of a city is void, as it is an unjust discrimination between citizens, giving one a right to do that which would be penal if done·by another.

Petition by the city of Brooklyn to compel Robert Furey to remove certain frame buildings from lots within the fire limits of the city.　Granted.

Albert G. McDonald, for plaintiff.
Baldwin F. Strauss, for defendant.

CLEMENT, C. J.　By section 51 of title 14 of the revised charter this court has power to decree that any building erected in violation ·of the provisions of such title shall be taken down and removed. In the year 1890 the respondent erected frame buildings on lots on Butler street between Fourth and Fifth avenues in this city, and subsequently, about the year 1893, erected other frame buildings on the same lots.　The block in question was taken into the fire limits ·on June 5, 1878, and the buildings were put up contrary to the building law, unless the common council has power to permit the erection and retention of frame buildings within the fire limits.　On June 9, 1890, the common council passed a resolution that the owner of the premises in question be permitted to retain the frame structures, and that the corporation counsel take no proceedings for the removal of the same.　On April 7, 1893, the common council passed another resolution that permission be granted to Robert Furey to retain frame extension on premises 415 Butler street, providing the consent of the department of buildings be obtained. The two resolutions above set forth remained in the mayor's hands for 10 days without being approved or disapproved.

The sole question to be considered is whether or not the common ·council can permit the erection of frame buildings within the fire. limits.　It seems to me to be very clear that the common council has no such power, and the only reason that the courts have not so

held is that the city authorities did not take action, but quietly allowed the law to be violated. The weight of authority is to the effect that the city authorities have power, under the general welfare clause, to establish fire limits, and to prohibit the erection of frame buildings therein, though in city charters granted in this state special power is given so to do, and such has been the custom in other states. Tied. Mun. Corp. § 130. I have hastily examined many charters, and find that there is no uniform method as to the establishment of fire limits. In New York City (Laws 1892, c. 275, § 31) the fire limits are defined by an act of the legislature, and the board of aldermen have no power in relation thereto. In Buffalo, power is given to the common council to fix the inner fire limits, and also the outer limits. In the inner limits frame buildings cannot be erected, and in the outer limits they may be erected by special permission of the common council. Laws 1891, c. 105, § 17, subd. 5. In Syracuse the legislature prohibited wooden buildings within a district named in the charter. Laws 1885, c. 26, § 202. In Albany it is provided that no frame building shall be constructed within the fire limits as established, or as they may be extended by the common council. Laws 1883, c. 298, tit. 20, § 1. In the charters of Poughkeepsie (Laws 1883, c. 523, tit: 8, § 176), Utica (Laws 1862, c. 18, tit. 8, § 116), Long Island City (Laws 1871, c. 461, tit. 7, § 1), Rochester (Laws 1861, c. 143, § 214), Mount Vernon (Laws 1892, c. 182, tit. 9, § 210), Ithaca (Laws 1888, c. 212, tit. 3, § 7, subd. 25), Binghamton (Laws 1888, c. 214, tit. 9, § 23), and Yonkers (Laws 1881, c. 184, tit. 8, § 1), provision is made that the common councils of the respective cities may establish fire limits. In Newburgh (Laws 1865, c. 541, tit. 8, § 1) and Elmira (Laws 1875, c. 370, § 136) the fire limits, as established, were to continue until altered by the common council; while in Cohoes (Laws 1892, c. 671, tit. 9, § 15) the fire commissioners fix the limits, and the common council has no power over the same. In the charter of this city, by section 3 of title 14 (Laws 1888, c. 583) it is provided that the building limits, within which all buildings thereafter erected should be of material other than wood, shall comprise the fire limits as established by law, or as they may be extended by the common council, and no buildings of wood should thereafter be erected within such limits. The provision in our charter is substantially the same as in the charter of Albany, supra. In the charter of Brooklyn the common council has the special power delegated to it "to enlarge the fire district" (Laws 1888, c. 583, tit. 2, § 12, subd. 7), and, after the special powers of the common council are set forth, we find the clause of general welfare, which has come down to us, with amendments, from the original charter (Laws 1834, c. 92, § 27). In the year 1835 the common council of Brooklyn was authorized to set off a certain district within which all buildings should be erected of other material than wood. Such district was, however, in the first instance, restricted by the act to the following bounds: Beginning at the intersection of Joralemon and Henry streets, and running thence along Joralemon street to the center of Court street; thence to the center of Butler street; thence to the

center of Henry street; and thence along the center of Henry street to the place of beginning. Laws 1835, c. 129, § 6. By the consolidation act of 1854, when old Brooklyn, Williamsburgh, and the town of Bushwick were brought into one municipal government, the common council was authorized, from time to time, to designate the fire limits. Laws 1854, c. 384, tit. 7, § 10. By chapter 472 of the Laws of 1860 the legislature established the fire limits in the eastern district, and by chapter 858 of the Laws of 1866 the fire limits of the western district were laid out. In each of the foregoing acts it was provided that the common council had the right to extend the fire limits, and the erection of wooden buildings in the limits of each district was prohibited. The charter of 1873 (Laws 1873, c. 863) did not repeal prior acts unless inconsistent therewith, but by section 23 of title 13 the fire limits were continued as they then existed, or as the limits should be extended by the common council, and (by subdivision 8, § 13, tit. 2) the common council was authorized to enlarge the fire district. The charter of 1888 was a revision, and, in order to understand its meaning, we have the right to go back to the charters of 1854 and 1873, and the various laws relating to the city which were not passed as amendments to those charters. The charter of 1888, unlike that of 1873, repealed all prior acts relating to the city, except those specifically designated. Laws 1888, c. 583, tit. 14, § 35. It appears, as before stated, that by chapter 858 of the Laws of 1866 the legislature of this state designated the fire limits of the western district, and provided that the common council might extend the same, and that no frame buildings should be erected in the limits as designated or as extended; and it further appears that by the charters of 1873 and 1888 the building limits comprised the fire limits as established by law, or as such limits should be extended by the common council, and the erection of wooden buildings therein was prohibited. This seems to amount to an absolute prohibition by the legislature, and the common council cannot pass an ordinance in contravention of the laws of the state. By chapter 202 of the Laws of 1893 the common council was authorized to exclude from the fire limits certain territory if they deemed it proper. If the common council had the power, as claimed, no enabling act was necessary.

It is contended by the counsel for the respondent that, under the clause of general welfare, the common council had the power to grant the permits in evidence. If we leave out of our consideration the provisions in the charter as to the department of buildings just referred to, and turn to the powers specifically granted to the common council, the respondent is in no better position. By subdivision 7 of section 12 of title 2, the common council has power to enlarge the fire district, and section 13 is the clause of general welfare. I quote from Endlich on the Interpretation of Statutes (section 399), which lays down the proper rule of construction in such a case:

"The maxim 'expressio unius est exclusio alterius' applies, indeed, wherever an act contains general provisions, and also special ones upon a subject which, standing alone, the general provisions would include. In such cases the spe-

cial provisions upon that particular subject indicate an intention that it is not to be included in the general provision, and the latter is held inapplicable to it, or, as it is sometimes said, is controlled by the special provisions."

See, also, Pretty v. Solly, 26 Beav. 606.

When the legislature gave the common council power to enlarge the fire district, I am of opinion that it thereby prohibited that body from doing the opposite. The legislature considered what powers should be given on the subject to the common council, and determined that it might enlarge, but not reduce, the fire district. The subsequent general clause as to their powers, by which that body might pass an ordinance for the general welfare, did not confer the right to interfere with the fire limits, because the subject had been considered in fixing their special powers. Flanagan v. Hollingsworth, 2 How. Pr. (N. S.) 391, and 108 N. Y. 621, 15 N. E. 74, and cases there cited.

The counsel for respondent claims that his client, by reason of the consents obtained and the lapse of time, has vested rights. The difficulty is that he never had any rights to vest. A similar case arose in New York City, where the dock department attempted to lease piers with sheds erected in violation of the fire laws. Judge Earl in that case said (Fire Dept. of New York v. Atlas S. S. Co., 106 N. Y. 566, 577, 13 N. E. 329):

"The defendant, by its lease of the pier from the dock department, was not authorized to violate the building laws applicable to the city. No department or officer of the city government could enter into a valid stipulation with the defendant by which it would be authorized to violate any law enacted for the public safety."

I am also of opinion that the ordinances of the common council, giving consent to the respondent to erect frame buildings within the fire limits, are void as unjustly discriminating between one citizen and another. The resolutions do not purport to reduce the fire limits, but are simply permits. They allow one citizen in a block to do an act which is penal if done by any other citizen in the same block. Special discrimination by ordinance is not allowed. Dill. Mun. Corp. (4th Ed.) § 322, and cases cited.

A decree will be entered requiring the respondent to take down and remove all the frame buildings on the lots in question. A reasonable time to comply with the decree will be allowed; findings and decree to be settled on June 29th at 10 a. m.