In the Matter of S. B. GARAGE CORPORATION, Petitioner, and MANUFACTURERS TRUST CO., as Trustee, Intervener, Petitioner, against HARRIS H. MURDOCK et al., Constituting the Board of Standards and Appeals of the City of New York, Respondents.

Supreme Court, Special Term, Kings County, April 27, 1945.

*Jerome N. Wanshel* for petitioner.

*Gerard I. Walters* for intervener, petitioner.

*Ignatius M. Wilkinson, Corporation Counsel (Charles C. Weinstein* and *Silas S. Lippman* of counsel), for respondents.

SMITH, J. The petitioner and intervener, as owner and mortgagee in interest, respectively, in a parcel of real property, bring this proceeding to review a determination made by the Board of Standards and Appeals of the City of New York whereby it revoked a certificate of occupancy, issued on June 1, 1921, for a public garage located on premises in the borough of Brooklyn which are described variously as 287–305 McKibben Street, 69–85 White Street and 298–302 Boerum Street. Upon this motion the respondent board seeks an order dismissing the proceeding and confirming its revocation of the said certificate of occupancy.

The premises in question consist of a one-story building which was erected in 1921 as a garage for more than five motor vehicles. The building is located in an unrestricted use district and fronts on three adjoining city streets. The original application and plans which were filed with the Building and Fire Departments for a permit to erect the said garage indicated that it was to extend on the northerly side of McKibben Street between Bushwick Avenue and White Street for a distance of 200 feet from the northwest corner of McKibben and White Streets, with entrances and exits on McKibben Street. At the time when such application and plans were filed, and when the permit and the certificate of occupancy were thereafter issued, Public School No. 147 was (and still is) situated on the southerly side of McKibben Street between Bushwick Avenue and White Street, with an entrance and exit on McKibben Street, the distance between the two buildings at their nearest points of proximity being slightly in excess of 600 feet.

At the time when the permit and the subsequent certificate of occupancy were issued the pertinent Building Zone Resolution (§ 20, as amd. June, 1919) read as follows: " No garage for more than five cars may be erected or extended and no building not now used as a garage for more than five cars may have its use changed to a garage for more than five cars on any portion of a street between two intersecting streets in which portion there exists an exit from or an entrance to a public school; or in which portion there exists any hospital maintained as a charitable institution; and in no case within a distance of 200 feet from the nearest exit from or entrance to a public school; nor within 200 feet of any hospital maintained as a charitable institution. This protection shall also apply to duly organized schools for children under 16 years of age, giving regular instruction at least five days a week for eight months or more each year, owned and operated by any established religious body or educational corporation. This limitation on the location of garages shall apply to unrestricted as well as business and residence districts; but in no case shall it apply to cases where applications for the erection or extension of garages or the conversion of existing buildings into garages may be pending before the Board of Appeals at the time of the adoption of this resolution."

The petitioner is a corporation which acquired fee title to the premises at a cost of $54,000 on August 29, 1939.

In 1927, a few years subsequent to the issuance of the certificate of occupancy, the then holder of two bonds and mort-

gages, which constituted liens upon the property, consolidated the same and sold participating certificates therein. The intervening petitioner, as successor-trustee of the consolidated bond and mortgage, represents the interests of the participating certificate holders.

On January 6, 1941, after the continuous and uninterrupted use of the said property as a public garage for a period approximating twenty years, the Commissioner of the Department of Investigation of the City of New York, acting on behalf of the latter, brought on a proceeding to procure the revocation of the certificate of occupancy on the ground that it had been issued in contravention of the above-mentioned provision of the zoning resolution. His contention was sustained by the Board of Standards and Appeals. This proceeding to review that determination was then brought on.

Upon the hearing before the board, evidence was adduced to disclose the following: In connection with the filing of the application in 1921 for the construction of the garage, there were filed certain plans for the proposed improvement including a diagram of the block plan. The area on McKibben Street, immediately opposite the site of the proposed garage, was marked "Park." Respondent contends that the plan, as submitted, gave the impression that the park extended for the entire length of McKibben Street, from White Street to Bushwick Avenue, although as a matter of fact Public School No. 147 was located at the Bushwick Avenue end of the same block, the school having an entrance on the McKibben Street side. The diagram omitted that portion of McKibben Street which included the school as well as a substantial area immediately adjoining the same. The Commissioner of Investigation contends that the submission of a diagram of such character constituted misrepresentation on the part of the applicant. A specific finding upon that issue is unnecessary herein. Suffice it to say that it does not appear that the applicant was ever asked to submit any plot plan for the entire length of McKibben Street between the intersections of Bushwick Avenue and White Street.

Apparently on the strength of the above-indicated diagram the application for the permit was approved and following construction of the garage the certificate of occupancy was issued.

In my opinion, it is manifest beyond cavil that the issuance of the permit and the certificate of occupancy was in direct contravention of the above-mentioned provision of the zoning

resolution. The provision is couched in such specific terms that it permits of not the slightest obscurity. The provision was intended to proscribe the construction of a garage on any part of a street between two common intersections, where there was on such street an entrance to or an exit from a public school. That specific proscription was in no way limited or lessened by the additional safeguard whereby a garage was not to be erected in any event within 200 feet from the nearest entrance to or exit from a public school. Clearly, the latter clause was included for the purpose of imposing a minimum distance between a garage and the nearest entrance or exit of a public school where they were not located *on the same street*.

The decisions rendered in *People ex rel. Sondern v. Walsh No. 1* (108 Misc. 193) and *People ex rel. Sondern v. Walsh No. 2* (108 Misc. 196) relied upon by petitioners herein, do not justify an interpretation at variance with the plain intent of the zoning provision here considered.

Necessarily, the right to a continuance of the building for garage purposes depends solely upon the question whether the permit and the certificate of occupancy, in the first instance, satisfied all legal prerequisites. " No building permit by an administrative official could condone, or afford immunity for, a violation of law." (*Marcus v. Village of Mamaroneck*, 283 N. Y. 325, 330; see, also, *Matter of Rosevale Realty Co. v. Kleinert*, 206 App. Div. 712, appeal dismissed 236 N. Y. 605; *Matter of Rosenbush v. Keller*, 247 App. Div. 748; *Altschul v. Ludwig*, 216 N. Y. 459, 469.)

The doctrine of law adhered to in cases such as *City of Buffalo v. Chadeayne* (134 N. Y. 163) is unavailing under the circumstances of the present situation. In that case the owner of a building was granted a permit to build in conformity with a resolution of the Common Council. Having acted upon such conforming permit, the owner thereby acquired a vested right therein. Here, however, the permit and the certificate of occupancy were issued, as stated by the Court of Appeals in *Matter of Kaltenbach v. Bd. of Stand. & App.* (274 N. Y. 34, 38), " * * * *in disregard of the Zone Resolution* and * * * should, therefore, * * * [be] revoked."

It is claimed by the petitioning owner that prior to its acquisition of title to the premises in 1939, its counsel ascertained that (1) a certificate of occupancy had been issued in 1921 for the building as a public garage; (2) that there were no violations of record; (3) that real estate taxes upon the premises

had been received by the City of New York for eighteen years, and (4) that the Fire Department of the City of New York had continuously issued gasoline and storage garage permits for the entire period since the construction of the building.

In addition thereto, it is claimed by the intervening trustee that its purchaser, prior to purchasing a mortgage interest in the premises in 1927, wrote letters to the Superintendent of Buildings and the Fire Commissioner, respectively, to obtain information as to any violations then pending and was advised by each that none existed.

The foregoing circumstances, however, may not be seized upon as constituting a species of estoppel preclusive upon the right of the municipality to revoke the unlawfully issued certificate of occupancy. The promulgation of zoning ordinances constitutes a governmental function. (See *Premium Bond Corp.* v. *City of Long Beach,* 249 App. Div. 756.) A municipality may not be held equitably estopped by the original misfeasant or malfeasant act of its officers or agents in having issued a permit contrary to the plain mandate of a zoning provision. (*People* v. *Santa Clara Lumber Co.,* 213 N. Y. 61; *Marcus* v. *Village of Mamaroneck,* 283 N. Y. 325, *supra; Village of North Pelham* v. *Ohliger,* 216 App. Div. 728, affd. 245 N. Y. 593; *Lipsitz* v. *Parr,* 164 Md. 222; *Maguire* v. *Reardon,* 41 Cal. App. 596, affd. 255 U. S. 271.) Nor may laches on the part of a municipality in seeking the revocation be interposed as a bar. The applicable rule is set forth in *City of Brooklyn* v. *Furey* (9 Misc. 193, 198) wherein it is stated: " The counsel for respondent claims that his client, by reason of the consents obtained and the *lapse of time,* has vested rights. The difficulty is that he never had any rights to vest." (Italics supplied.)

I fully sympathize with the plight of the present owner and of the trustee representing the holders of participating shares in the consolidated bond and mortgage. In good faith they have invested their moneys in the property upon reliance on the lawful issuance of the certificate of occupancy. Unfortunately, they are unable to invoke any protective ordinance or statute such as is found in the Multiple Dwelling Law. Significantly, section 301 thereof provides that whenever a bona fide purchaser has " * * * relied upon such certificate, no claim that such building had not, prior to the issuance of such certificate, conformed in all respects to the provisions of this chapter shall be made against such person or against the interest of such person in a multiple dwelling to which such a certificate applies or concerning which such a statement has

been issued.'' (See, also, *Matter of Edwards* v. *Murdock,* 283 N. Y. 529.)

The apparent harshness of the result here reached, however, may well be alleviated by the adoption of a procedure in conformity with the suggestion offered by counsel to the respondent board in its brief upon this motion. In the concluding portion of said brief it is stated: '' The Board of Standards and Appeals was justified in revoking the certificate of occupancy because the law prohibited the erection of a garage at the location in question. The only agency authorized to grant permission for such use is the Board of Standards and Appeals. An application should therefore be made to the said Board to maintain the said garage.''

Attention may also be called to the fact that upon the hearing before the Board of Standards and Appeals the chairman made the following remark: '' As I pointed out before, the owner of the garage has two remedies. In the event the Board decides to set aside the certificate, which of course they haven't decided as yet, I don't know what they will do, the remedy is as I pointed out, first they could close the doors on McKibbin Street because Section 21 of the Zoning Resolution as it is now worded will permit the garage, provided there is no entrance on the school street. That is one thing they could do. They could do that in five minutes and clear the whole thing up. The second thing they could do, if they don't want to do that, is to come to the Board under an application for a zoning variation under section 7g and ask the Board to legalize this condition by making a variance.''

Respondents' application for an order dismissing the proceeding and confirming the revocation of the certificate granted.