[No. 1514-1. Division One. August 6, 1973.]

THE CITY OF MERCER ISLAND, *Appellant*, v. RICHARD
STEINMANN, JR., *et al.*, *Respondents.*

*Montgomery, Purdue, Blankinship & Austin* and *Jerry W. Spoonemore,* for appellant.

*Elvidge, Veblen, Tewell, Bergmann & Taylor* and *John Veblen,* for respondents.

CALLOW, J.—The City of Mercer Island appeals the refusal to enjoin as a public nuisance the alleged rental of apartment units in violation of the City of Mercer Island zoning code.

In 1964, the property owner resided in a single family dwelling within the boundaries of the City of Mercer Island. The home was situated within an area zoned R-8.4 Residential, Single Family. In August of 1964, he applied for a building permit for the construction of an addition primarily above an existing garage for a "game room," "hobby area" and "photo dark room." The owner never indicated an intent to use the premises for rental purposes but rather indicated the remodeling was being done for personal use. The permit was granted, and the City of Mercer Island Building Department inspected the construction from time to time during the fall of that year.

The home as modified contains three separate living areas: the house area, the remodeled space above the garage area, and the unit in the ground floor garage area. The house area contains a complete kitchen, full bathroom, combined dining and living room and a separate entrance. It was advertised as an apartment and rented for $120 per month. The addition above the garage contains a living room, two bedrooms, a bathroom and a kitchen; and the space on the ground floor level of the garage contains a bed, refrigerator, sink, hot plate, full bathroom and a separate outside entrance. It has been advertised as a studio apartment and rented for $95 per month.

Early in 1965, the owner moved into the area above the garage and began renting the house area to various persons including married couples. Apparently in 1969, he began renting out the former ground floor garage area which had been converted to a living unit. The occupants of the separate areas each prepare their own meals, but the occupiers of the rented units share coin-operated laundry facilities. The homeowner requires payment of the first and last months' rent upon occupancy. Up to the time of trial, the owner continued to live in the area above the garage and rented the other two living units to various persons.

The issues raised by the appeal involve whether a municipality may be estopped by the issuance of a building permit from subsequently enforcing a zoning ordinance prohibiting the use of the structure pursuant to the modification permitted, the interpretation of the applicable zoning ordinance, the definition of the term "lodger" as contrasted to the term "tenant," and whether the present use of the property should be enjoined.

■ ■ Equitable estoppel may arise where there exists:

1. A statement or act inconsistent with a later asserted claim;

2. An action by the relying party on the faith of such statement or act; and

3. Injury to the relying party would result if the party making the representation were permitted to contradict or repudiate the statement or act. *Leonard v. Washington Employers, Inc.,* 77 Wn.2d 271, 461 P.2d 538 (1969); *Bignold v. King County,* 65 Wn.2d 817, 399 P.2d 611 (1965). The doctrine will be applied temperately against any level of government or its subdivisions and will not be applied where its application would interfere with the discharge of governmental duties or where the officials on whose conduct estoppel is sought to be predicated acted beyond their power. *Kitsap-Mason Dairymen's Ass'n v. State Tax Comm'n,* 77 Wn.2d 812, 467 P.2d 312 (1970); *Finch v. Matthews,* 74 Wn.2d 161, 443 P.2d 833 (1968); Annot., 1 A.L.R.2d 338, 340 (1948). While estoppel may be applied

equitably against a municipality acting in a proprietary capacity, the bar of the doctrine is less likely to be applied when a municipality has acted in a governmental capacity. *King County v. Commercial Waterway Dist. 1,* 42 Wn.2d 391, 255 P.2d 539 (1953); *Strand v. State,* 16 Wn.2d 107, 132 P.2d 1011 (1943). Estoppel will not be applied against a municipal corporation acting in a governmental capacity unless it is clearly necessary to prevent obvious injustice. *Bennett v. Grays Harbor County,* 15 Wn.2d 331, 341, 130 P.2d 1041 (1942). In the *Bennett* case, the court noted that those who deal with public officers must ascertain the extent of their authority, and public officers cannot permit citizens to act contrary to the law. The evidence must present unmistakable justification for imposition of the doctrine when a municipality has acted in its governmental capacity. *State v. Charlton,* 71 Wn.2d 748, 430 P.2d 977 (1967).

 These principles bear upon controversies involving the administration of zoning ordinances which is a governmental rather than a proprietary function. As pronounced in *S.B. Garage Corp. v. Murdock,* 185 Misc. 55, 55 N.Y.S.2d 456 (1945), at page 60:

> The promulgation of zoning ordinances constitutes a governmental function. . . . A municipality may not be held equitably estopped by the original misfeasant or malfeasant act of its officers or agents in having issued a permit contrary to the plain mandate of a zoning provision.

(Citation omitted.) Annot., 1 A.L.R.2d 338, 350 (1948).

Likewise, in 3 C. Rathkopf, *The Law of Zoning and Planning* § 2 (3d ed. 1972), we find at page 67-2:

> it is generally held that in respect of the enforcement of zoning ordinances, neither laches nor estoppel applies. Consequently, even though a building permit, . . . may have been issued, . . . indicating the validity of the structure or use, this does not serve . . . to create an estoppel which would prevent the municipality from revoking the permit . . . at any time on the ground of invalidity of the structure of the use or from otherwise enforcing the ordinance.

(Footnote omitted.) *See also* Annot., 1 A.L.R.2d 338, 350 (1948).

■ Therefore, a municipality is not precluded from enforcing zoning regulations if its officers have issued building permits allowing construction contrary to such regulations, have given general approval to violations of the regulations, or have remained inactive in the face of such violations. *San Francisco v. Burton*, 201 Cal. App. 2d 749, 20 Cal. Rptr. 378 (1962); *Fox v. Windemere Hotel Apartment Co.*, 30 Cal. App. 162, 157 P. 820 (1916); *Flinn v. Treadwell*, 120 Colo. 117, 207 P.2d 967 (1949); *Pallman v. East Haven*, 135 Conn. 593, 67 A.2d 560 (1949); *Gregory v. Wheaton*, 23 Ill. 2d 402, 178 N.E.2d 358 (1961); *Berwyn Heights v. Rogers*, 228 Md. 271, 179 A.2d 712 (1962); *Ferrante v. Board of Appeals*, 345 Mass. 158, 186 N.E.2d 471 (1962); *V.F. Zahodiakin Eng'r Corp. v. Zoning Bd. of Adjustment*, 8 N.J. 386, 86 A.2d 127 (1952). The rule is best stated in the *Zahodiakin* case as follows at page 396:

> The want of fundamental power cannot be indirectly supplied by the application of the doctrine of estoppel *in pais*. The elements of estoppel are wanting. The governmental zoning power may not be forfeited by the action of local officers in disregard of the statute and the ordinance. The public has an interest in zoning that cannot thus be set at naught. The plaintiff landowner is presumed to have known of the invalidity of the exception and to have acted at his peril.

We turn to the ultimate question of whether the use of the property is authorized by the ordinance which we must determine as a matter of law. *Mercer Island v. Kaltenbach*, 60 Wn.2d 105, 107, 371 P.2d 1009 (1962). The Mercer Island zoning code defines a family as "Any number of related persons and not to exceed two unrelated persons, and not to exceed five non-related persons, living as a single non-profit housekeeping unit." It cannot be said that the persons occupying the separate dwelling areas are living with the property owner as part of a single, nonprofit housekeeping unit designated as a "single family" under the code. Under these circumstances, the argument is made by

the owner that he is allowed the use to which he is putting the property by the provision of the zoning code which permits "Lodgers not to exceed two (2)" in a residential single family zone. The code does not define the term "lodgers," however, the common understanding of the word is not unformed but is clear and explicit.

The owner testified that over the course of the years at least seven or eight different people had lived on the premises; and that at the time of the trial, the unit in the house was rented to a single woman and the unit on the ground level of the garage was rented to a young man. The court found that the rented portion containing kitchen facilities was an apartment, further found that the owner was "entitled to have one lodger in each unit of the two units that he is renting out" and finally found that "the defendant is complying with the law in that he is having no more than two lodgers on his premises . . ." It is the contention of the city that the occupants were apartment tenants. Whether the characterization of the occupants as "lodgers" is properly a finding of fact or a conclusion of law depends upon the content of the statement and not upon the label applied. *Ferree v. Doric Co.*, 62 Wn.2d 561, 383 P.2d 900 (1963); 89 C.J.S. *Trial* § 647 (1955). We believe the designation of the occupants as lodgers is an application of legal definition and as such is subject to scrutiny on appeal as a conclusion of law.

The relationship between the property owner and those who occupied the separate units in the house and garage was that of landlord and tenant rather than that of owner-host and lodger. The factors indicative of tenancy are: (1) the exclusive possession of the rooms by the occupiers without a right of control or entry in the owner during the occupancy, (2) the separateness of each living unit from the remaining areas of the structure, (3) the existence of private outside entryways for each living space with keys possessed privately by the occupiers, (4) the absence of commonly shared cooking, eating and bathing facilities or other areas, (5) the arrangement of rental on a

landlord-tenant basis, and (6) the absence of the performance of cooking, cleaning, garbage removal and telephone services for the occupiers by the owner. *Green v. Watson,* 224 Cal. App. 2d 184, 36 Cal. Rptr. 362 (1964); *Roberts v. Casey,* 36 Cal. App. 2d 767, 93 P.2d 654 (1939); *Johnson v. Kolibas,* 75 N.J. Super. 56, 182 A.2d 157 (1962).

The evidence is clear that the units were occupied under a landlord-tenant relationship and not as lodgings. As stated in *Stowe v. Fritzie Hotels, Inc.,* 44 Cal. 2d 416, 421, 282 P.2d 890 (1955):

> The chief distinction between a tenant and a lodger lies in the character of possession. A "tenant" has exclusive legal possession of premises and is responsible for their care and condition. A "lodger" has only the right to use the premises, subject to the landlord's retention of control and right of access to them. To make one a tenant, as respects an owner's liability for injuries sustained by occupant on the premises, he must have exclusive possession and control. . . . When premises are under the direct control and supervision of the owner and rooms are furnished and attended to by him, he or his servants retaining the keys to them, a person renting such a room is a lodger and not a tenant. . . . The word "apartment" in its usual and ordinary connotation signifies that its occupant acquire exclusive possession and is a tenant rather than a roomer.

(Citations omitted.) The use of the premises in this manner is a violation of the zoning code which may be proscribed pursuant to its terms.

■ Injunctive relief is available against zoning violations which are declared by ordinance to be nuisances. *Mercer Island v. Kaltenbach, supra; Hull v. Hunt,* 53 Wn.2d 125, 331 P.2d 856 (1958); *Shields v. Spokane School Dist. 81,* 31 Wn.2d 247, 196 P.2d 352 (1948); *Park v. Stolzheise,* 24 Wn.2d 781, 167 P.2d 412 (1946); Annot., 129 A.L.R. 85 (1940). The Mercer Island code states that any use of property contrary to the ordinance is a public nuisance which the city may abate by an action in the superior court. The relief may be sought by the municipality itself to restrain the violation taking place. *Onondaga v. Central School Dist.*

486

*1,* 56 Misc. 2d 26, 287 N.Y.S.2d 581 (1968); 8A E. McQuillin, *Municipal Corporations* §§ 25.343-.349 (3d ed. 1965). The enforcement of a zoning ordinance by injunction is essential if the amenities of the area sought to be protected are to be preserved. 1 E. Yokley, *Zoning Law and Practice* § 10-6 (3d ed. 1965); 3 E. Yokley, *Zoning Law and Practice* § 22-4 (3d ed. 1967).

The judgment is reversed and the cause remanded to the trial court for issuance of the injunction requested.

FARRIS and JAMES, JJ., concur.