FILED
COURT OF APPEALS
DIVISION II

2014 DEC 30 AM 9: 42

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CITY OF BONNEY LAKE, a municipal corporation, | No. 42988-8-II |
| Respondent, | PART PUBLISHED OPINION |
| v. | |
| ROBERT KANANY, | |
| Appellant. | |

BJORGEN, J. — Robert Kanany appeals the trial court's denial of his summary judgment motion and its grant of summary judgment to the City of Bonney Lake (City), upholding civil penalties assessed by the City for various code violations at Kanany's properties. The published portion of this opinion addresses Kanany's argument that portions of Title 14 of the Bonney Lake Municipal Code (BLMC) deprived him of procedural due process because they did not provide an appeal process for all violations claimed and penalties assessed. On this issue, we hold that the relevant portions of Title 14 BLMC provided Kanany with a full opportunity to appeal the notices of violation and penalties at issue and therefore did not deprive him of due process. In the unpublished portion of the opinion, we reject Kanany's remaining arguments. Accordingly, we affirm the decision of the trial court.

FACTS

Kanany and Navid Kanani[1] are co-owners of property in the City. In 2004, Kanany applied for a residential accessory building permit from the City, indicating his intent to build a duplex and a garage with a heated upstairs unit on the property. The City approved his permit and noted that "per code detached garage may not be converted to living space." Clerk's Papers (CP) at 212. After the duplex and garage were built, Kanany used the duplex as a rental property.

Between 2007 and 2009, responding to complaints about Kanany's property, the City investigated the space above Kanany's garage to determine whether he was in compliance with the BLMC. In February 2007, the City sent Kanany a notice of civil violation, indicating that his property was in violation of BLMC 18.22.090 because he utilized or converted a portion of the garage into an "Accessory Dwelling Unit" (ADU). ADUs are prohibited in conjunction with a duplex. BLMC 18.22.090(C)(1). The City imposed a $1,000-a-day fine until Kanany became compliant. The notice stated that Kanany had 15 days to appeal the notice.

In March 2007, Kanany sent Denney Bryan of the City a letter stating that his attorney had been told by the City that Kanany would not be in violation of the BLMC as long as the space above the garage did not contain a kitchen stove and washer/dryer and that Bryan had told him that the washer/dryer "is not an issue." CP at 216. Kanany stated that his tenants were using the space above the garage as a bedroom and recreational room and that "neither appliances" were in that space. CP at 216. This apparently satisfied the City for 2007. In 2008, responding to a

---

[1] Because the last names Kanany and Kanani are similar, we refer to Navid Kanani by his first name to avoid confusion, intending no disrespect.

complaint from a neighbor, the City again investigated and concluded that Kanany's property and the space above the garage still complied with the BLMC.

On August 5, 2009, after another complaint, the City issued a letter to Kanany stating that the space above the garage violated BLMC 18.22.090(C)(1). The City asked Kanany to voluntarily comply with its requests to vacate tenants from the space and arrange an inspection of the property to verify the vacancy. The City gave Kanany 45 days to comply.

On November 18, 2009, the City sent Kanany a notice of civil violation indicating that he had failed to respond to its letter within 45 days. The notice stated that under BLMC 14.130.070, it was imposing a $1,000-a-day fine until Kanany complied, and that under BLMC 14.130.080 and BLMC 14.120.020, the City's violation determination and subsequent fine were final unless Kanany appealed within 15 days. Kanany did not appeal.

On January 8, 2010, the City filed a complaint against Kanany in superior court, asserting that he maintained an impermissible ADU in violation of BLMC 18.22.090(C)(1). Alleging Kanany's failure to respond to the November 2009 notice of civil violation, the City stated that its code violation determination and fines were final and collectible under BLMC 14.130.070.

In the complaint, the City misidentified the property's address and in June 2010, it moved under CR 15(a) for leave to file an amended complaint with the property's correct address.[2] Kanany objected to the City's motion because the City had not joined Navid as a necessary party in the lawsuit under CR 19(a).

---

[2] The City identified Kanany's city mailing address as the address in violation instead of the proper address of the property containing the duplex and garage.

In August, the trial court determined that (1) chapter 14.130 BLMC was constitutional on its face and as applied to Kanany, (2) Navid was not a necessary party to the action under the BLMC or CR 19(a), and (3) the City's motion to amend was proper under CR 15(a). The trial court granted the City's motion to amend.

In November 2011, Kanany and the City filed cross motions for summary judgment. Kanany's motion asked the court to dismiss the City's complaint with prejudice. Kanany contended that beginning in 2004, he communicated with City officials several times about the space above his detached garage and they always told him that he was in compliance with the BLMC until the November 2009 notice of civil violation. Kanany asserted that he was not in violation of the BLMC because his tenants' use of the space above the garage had not changed between 2004 and 2009. Kanany also asserted that equitable estoppel prevented the City from assessing fines against him because it had previously agreed that Kanany was not in violation. Finally, Kanany argued that BLMC 18.22.090(C)(1) was invalid and unenforceable because it directly conflicted with an overriding BLMC provision and was fatally inconsistent with the City's comprehensive plan.

To support his motion, Kanany filed a declaration attaching copies of several documents, including his 2007 and 2008 communication with the City, a June 2008 letter from the City to the complaining neighbor, the August 2009 letter and Kanany's letter in response, and the November 2009 notice of violation from the City. Kanany also supported his motion with a declaration from his attorney and attached copies of several City ordinances and the City's comprehensive plan.

4

The City's cross motion for summary judgment asked the court to find that Kanany violated the BLMC and owed $48,000 in fines. The City argued that it gave Kanany proper notification of the violation and the consequences for failing to voluntarily correct the violation. The City stated that because Kanany failed to contact the City within 45 days of receiving the notice letter, it issued a notice of civil violation and imposed a $1,000-a-day penalty while the violation continued. In addition to the 45 days given to respond to the City's August 2009 letter, the City gave Kanany 15 days to appeal the November 2009 violation notice and penalty; however, Kanany still failed to respond. The City argued that there was no genuine issue of fact that Kanany failed to appeal the notice and fines and, absent any appeal, the City's notice of civil violation is final and the associated fines are collectible.

In December 2011, the trial court granted the City's motion for summary judgment and denied Kanany's motion for summary judgment. The court entered judgment "against [Kanany] on behalf of the City for $48,000, the total amount of fines owed in connection to the Notice of Civil Violation as of the filing of the original complaint in this matter." CP at 350. Kanany appeals.

## ANALYSIS

Kanany argues that under *Post v. City of Tacoma*, 167 Wn.2d 300, 217 P.3d 1179 (2009), BLMC 14.120.020, 14.130.070, and 14.130.080 are unconstitutional because they allow a single notice of violation to impose subsequent daily penalties without any opportunity to appeal them. The City argues that the BLMC is unlike the Tacoma city ordinances at issue in *Post* because the BLMC provided express procedures for Kanany to raise any argument against the violation determination, but Kanany declined to take advantage of any of the procedures. Kanany also

raises a number of challenges discussed in the unpublished portion of this opinion. We affirm all the challenged rulings of the trial court.

## I. STANDARD OF REVIEW

Summary judgment is appropriate where the pleadings and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). We review questions of law de novo. *Berger v. Sonneland*, 144 Wn.2d 91, 103, 26 P.3d 257 (2001). When reviewing a grant of summary judgment, we consider solely the issues and evidence called to the trial court's attention on a motion for summary judgment. RAP 9.12.

## II. PROCEDURAL DUE PROCESS

Title 14 BLMC provides the City's enforcement authority for development code violations. BLMC 14.130.010. Each day in violation constitutes a separate offense. BLMC 14.130.020(C). BLMC 14.130.030(A) provides that any development code violation shall be a misdemeanor and a civil violation, the penalty being $1,000 for each day in violation. If the City determines that a person is violating the development code, it attempts to secure voluntary correction of the problem by explaining the violation and requesting correction before issuing a notice of civil violation. BLMC 14.130.060.

A notice of civil violation represents a determination that a violation of the development code has been committed. BLMC 14.130.070(A). A property owner may file a written appeal of the notice to the hearing examiner within 15 days of its issuance. BLMC 14.120.020(A), .130.080. At the hearing before the hearing examiner, the property owner and the City department director may participate and call witnesses. BLMC 14.130.080. The hearing examiner is required to prepare findings as to whether a preponderance of evidence shows that the violation occurred and

that the required corrective action is reasonable. BLMC 14.130.080. The hearing examiner's decision may be appealed to superior court. BLMC 14.120.020(G).

Our state and federal case law holds that the fundamental requirement of procedural due process "is the opportunity to be heard at a meaningful time and in a meaningful manner." *Post*, 167 Wn.2d at 313 (citing *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)). To determine whether existing procedures are adequate to protect the interest at stake, a court must consider the following three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Post*, 167 Wn.2d at 313 (quoting *Mathews*, 424 U.S. at 335); *see also Tellevik v. Real Prop.*, 120 Wn.2d 68, 78, 838 P.2d 111 (1992) (adopting and applying the *Mathews* test).

The analysis in *Post* illustrates the application of the *Mathews* test in a setting similar, but not identical to that presented here. In *Post*, the City of Tacoma found many of Post's properties to be in violation of various city standards. *Post*, 167 Wn.2d at 303. Tacoma sent notices of violation for each property, "notifying Post that the properties were either substandard or derelict." *Post*, 167 Wn.2d at 305. These notices "described the violations and advised Post how to seek administrative review of the violation notice." *Post*, 167 Wn.2d at 305. For most of his properties, Post responded to the notices by agreeing to repair schedules. *Post*, 167 Wn.2d at 305. However, he did not respond to at least two of the violation notices. *Post*, 167 Wn.2d at 306.

7

"Post failed to comply with the agreed repair schedules for 17 properties." *Post*, 167 Wn.2d at 306. In response, Tacoma began issuing civil penalties in the amount of $125 per property pursuant to the Tacoma Municipal Code 2.01.060(D)(4)(b) and (E)(3)(b). *Post*, 167 Wn.2d at 306. As a result, Tacoma imposed hundreds of thousands of dollars in civil penalties. *Post*, 167 Wn.2d at 303, 307. Post attempted to appeal many of the fines, but in most cases Tacoma denied a hearing, taking the position that the appeals were untimely because its municipal code required an appeal within 30 days of the first notice of violation. *Post*, 167 Wn.2d at 306. Post sued, "seeking to bar Tacoma from enforcing its building code against him on numerous grounds," including the claim that his rights to due process were violated. *Post*, 167 Wn.2d at 303-04.

On appeal, the Supreme Court ultimately held that the civil infraction ordinance at issue offended procedural due process under *Mathews*, 424 U.S. at 333, because "it purport[ed] to authorize the unlimited and unreviewable issuance and enforcement of subsequent civil infractions and penalties without any system of procedural safeguards." *Post*, 167 Wn.2d at 315. In its *Mathews* analysis, the court in *Post* relied heavily on the risk of the erroneous deprivation of property rights due to the absence of any procedural safeguards after issuance of the first mandatory fine, including subsequent discretionary fines. *Post*, 167 Wn.2d at 313-15. Because those were separate decisions involving changed facts and risk of error, *Post* held that due process required new appeal opportunities. 167 Wn.2d at 314-15.

The mechanics of Tacoma's flawed system, though, were different in critical respects from that of the City of Bonney Lake. If, after issuance of a notice of violation, the violation was not corrected, the Tacoma ordinance provided for four successive mandatory fines. *Post*, 167 Wn.2d

at 304-05. If the violation remained after the four fines, Tacoma had the discretion either to assess or not to assess fines for each day until the violation was remedied. *Post*, 167 Wn.2d at 305. The owner had the right to seek administrative review only after the initial notice of violation and after the first mandatory fine. *Post*, 167 Wn.2d at 305. The owner had no right to an administrative appeal of any of the wholly discretionary fines Tacoma might impose after the mandatory penalties. *Post*, 167 Wn.2d at 305.

Here, in blunt contrast, there was nothing discretionary about the daily fines at issue. They were automatic, and Kanany had the full opportunity to appeal the continuing fines for his specific violation. The November 18 notice of civil violation characterized itself as continuing in nature and specifically described the nature of the violation, the code section violated, and the nature of the action required for its remedy. The notice imposed a daily fine[3] until compliance was achieved and specifically stated that the violation was ongoing. The notice then expressly advised Kanany that he could appeal under BLMC 14.130.080 and BLMC 14.120.020 by filing an appeal in writing with the Bonney Lake Planning and Community Development Department within 15 days of his receipt of the notice. BLMC 14.120.020 and BLMC 14.130.080 each specifically allow appeals of notices of civil violations.

Thus, the right to appeal that notice under BLMC 14.120.020 and BLMC 14.130.080 afforded the full opportunity to challenge both the determination that the violation was occurring and the imposition of specific daily fines until that violation was remedied. This appeal opportunity provided Kanany the vehicle to challenge the ongoing daily fines, whether accruing before or after the end of the 15-day appeal period.

---

[3] No issue is raised whether the total amount of the fines assessed is excessive as a remedial measure.

In sum, Kanany was given the full opportunity to appeal all aspects of the notice of civil violation, including the ongoing daily fine. That opportunity to appeal the entire assessment of fines was the step that was absent in *Post*. The absence of that opportunity, the absence of that safeguard against erroneous deprivation of property, was the flaw that led the court in *Post* to find a due process violation under *Mathews*. Here, that safeguard is fully present.

Returning to the test in *Mathews*, applied by our court in *Post*, 167 Wn.2d at 313, the private interest here is the same as that at stake in *Post*, that of avoiding the "assessment of erroneous or excessive monetary penalties." *Post*, 167 Wn.2d at 313. The government interest is also the same as that in *Post*, "protecting public safety, protecting property values, and preventing declining neighborhoods." *Post*, 167 Wn.2d at 314. The critical weight in the *Mathews* test in the present appeal is the second element, the risk of an erroneous deprivation of the private interest. As noted, *Post* relied on the absence of any procedural safeguards when Tacoma decided whether to issue its discretionary fines. *Post*, 167 Wn.2d at 314-15. As also noted, Kanany had the opportunity to appeal his ongoing fines in full. Requiring multiple opportunities to appeal the same fines for the same violation, which accrue after the appeal period, does little, if anything, to further guard against erroneous deprivation of the private interest at stake. Rather, its principal effect is to burden the municipality with superfluous and costly administrative processes, which directly erode the governmental interest protected by the third element in the *Mathews* test. Such redundancies in procedure are not among the majestic requirements of due process. Under both

*Mathews* and *Post*, the City here did not deprive Kanany of procedural due process.[4]

Our decision of this appeal, of course, is confined to those issues properly raised by it. Kanany's due process challenge is to the ongoing fines imposed by the notice of civil violation. He does not argue that he has attempted to remedy any lack of compliance or that the City has erred in deeming any such attempt to be inadequate. Thus, his due process challenge fails because he was given the opportunity to appeal his continuing daily fines for the violation found in the notice, as described above. On the other hand, if Kanany were challenging the City's decision on the adequacy of corrective measures he took, due process may well require the City to afford an administrative appeal of that decision and the continuation of the remedial fines.[5] *See Post*, 167 Wn.2d at 315. Kanany, however, is not raising such a challenge, either in an as applied or facial sense. The trial court was correct in ruling that the City's actions before us did not deprive Kanany of procedural due process.

---

[4] Alternatively, Kanany argues that the BLMC is also unconstitutional in that it does not provide a complete system for enforcing civil infractions. The system is incomplete, Kanany argues, because the hearing examiner is not authorized to decide constitutional or equitable matters. The City responds that the BLMC comports with chapter 7.80 RCW and is constitutional because constitutional and equitable arguments can still be raised through appeals in the state court system as provided in BLMC 14.120.020(G). Kanany's argument rests on *Post*. The citations he gives from *Post*, however, come from the Supreme Court's discussion of whether the Land Use Petition Act, chapter 36.70C RCW, barred Post from challenging Tacoma's imposition of penalties. *Post*, 167 Wn.2d at 308-12. Because neither party in this case raises a land use challenge, this portion of *Post* cannot be read for the remarkable proposition that hearing examiner systems throughout the state are unconstitutional because examiners are not authorized to decide equitable or constitutional questions. The BLMC is not unconstitutional for this reason.

[5] The City stated at oral argument that its municipal code would afford Kanany an opportunity to appeal in such a situation. Wash. Court of Appeals oral argument, *City of Bonney Lake v. Kanany*, No. 42988-8-II (Sept. 13, 2013), at 15 min., 06 sec. (on file with the court).

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

### III. REMAINING ISSUES

Kanany next argues that the trial court improperly granted the City's summary judgment motion, thereby denying his motion for summary judgment, because (1) the space above his garage is not an ADU as defined by the BLMC; (2) equitable estoppel prevents the City from claiming that Kanany's property is in violation of the BLMC; and (3) the portion of the BLMC that the City is enforcing is in direct conflict with the City's comprehensive plan and the state Growth Management Act, chapter 36.70A RCW.

The City responds that the trial court properly granted it summary judgment because (1) Kanany failed to timely challenge whether the space was an ADU; (2) equitable estoppel is unwarranted ; and (3) the BLMC is not in direct conflict with the City's comprehensive plan or the state Growth Management Act, chapter 36.70A RCW. We hold that Kanany is precluded from factually challenging the validity of the initial violation, that Kanany fails to meet all of the elements of equitable estoppel, and that the BLMC is not in conflict with the City's comprehensive plan or the state Growth Management Act.

A.  Whether the Space is an ADU

Citing the BLMC's ADU definition, Kanany argues that the space above his garage is not an ADU because it did not have a kitchen stove and washer/dryer appliances. The City responds that because Kanany failed to respond to the City's November 2009 notice of civil violation, as

required by the BLMC, the City's ADU determination was final and conclusive. BLMC 14.130.070(A) flatly states that a notice of civil violation is final, "unless appealed as provided herein." Kanany did not appeal the notice at issue. Therefore, the City is correct that Kanany is precluded from making this factual challenge.

B.     Equitable Estoppel

A party claiming equitable estoppel must establish by clear, cogent, and convincing evidence that

> (1) the conduct, acts, or statements by the party to be estopped are inconsistent with a claim afterward asserted by that party, (2) the party asserting estoppel took action in reasonable reliance upon that conduct, act, or statement, and (3) the party asserting estoppel would suffer injury if the party to be estopped were allowed to contradict the prior conducts, act, or statement.

Sorenson v. Pyeatt, 158 Wn.2d 523, 538-39, 146 P.3d 1172 (2006); Kramarevcky v. Dep't of Soc. & Health Servs., 122 Wn.2d 738, 743, 863 P.2d 535 (1993). In addition to satisfying each of the above elements, the party asserting equitable estoppel must have proceeded in good faith and have "clean hands," or be free from fault in the matter. Mut. of Enumclaw Ins. Co. v. Cox, 110 Wn.2d 643, 650, 757 P.2d 499 (1988).

The application of equitable estoppel against state or local governments is disfavored. Kramarevcky, 122 Wn.2d at 743. Consequently, where a party asserts equitable estoppel against the government, it must meet two additional requirements: (1) equitable estoppel must be necessary to prevent a manifest injustice, and (2) the exercise of governmental functions must not be impaired as a result. Kramarevcky, 122 Wn.2d at 743. The promulgation of zoning ordinances is a governmental function and generally estoppel does not apply to government enforcement of zoning ordinances, even when its officers have issued building permits, allowed construction contrary to regulations, have given general approval to regulation violations, or have remained

13

inactive in the face of such violations. *City of Mercer Island v. Steinmann*, 9 Wn. App. 479, 483, 513 P.2d 80 (1973).

Kanany fails to meet the requirements to successfully assert equitable estoppel against the City. He argues that he and the City had an express agreement that absent a kitchen stove and washer/dryer, the City would not consider his property to be an ADU. He asserts that he has "lived up to his side" of the agreement and that therefore the City should be equitably estopped from assessing monetary penalties against him. Br. of Appellant at 35. However, Kanany fails to cite any evidence that was before the trial court at summary judgment which supports his assertion that he has lived up to his side of the agreement as far as these appliances are concerned. Because he failed to appeal the initial violation, he cannot challenge its validity now. Kanany has failed to show any inconsistency in the positions taken by the City, not to mention any manifest injustice if the City is not estopped from enforcing its ordinances. Therefore, he has not met the requirements for equitable estoppel.

C.    Whether the BLMC is in Conflict with the City's Comprehensive Plan and State Growth Management Act

Kanany argues that BLMC 18.22.090(C)(1) is in direct conflict with BLMC 18.16.020(A), the City's comprehensive plan, and the Growth Management Act. Former BLMC 18.16.020[6] is titled "Uses permitted outright" for medium density residential districts, and provides, in part,

> The following uses are permitted in an R-2 zone, **subject to** the off-street parking requirements, bulk regulations and **other provisions and exceptions set forth in this code**:
>
> A.    Residential Uses:
>    1. Single Family residence;
>    2. Duplexes (two-family residences);

---

[6] BLMC 18.16.020 was repealed in 2010 but was in effect during the time at issue here.

3. Modular homes on individual lots;
4. Manufactured homes on individual lots;
5. Accessory dwelling units.

(Emphasis added.) BLMC 18.22.090(C)(1) provides, in part,

> One accessory unit shall be allowed per legal building lot as a subordinate use in conjunction with any single-family residence; no ADU will be permitted in conjunction with any duplex or multiple-family residence.

Contrary to Kanany's argument, these two subsections are not in conflict. Rather, former BLMC 18.16.020 allows ADUs in medium density residential districts, subject to other provisions and exceptions set forth in the City's development code. BLMC 18.22.090(C)(1) is one such provision in the development code that limits ADUs. Thus, these provisions are wholly consistent.

Kanany also argues that BLMC 18.22.090(C)(1)'s prohibition of ADUs in conjunction with a duplex violates the Bonney Lake Comprehensive Plan and the Growth Management Act. These arguments also fail. Although comprehensive plan policy 3-7a states the policy of allowing ADUs in all residential zones, the plan does not suggest that ADUs must be allowed in every location and every situation in those zones. Nor does the reasonable regulation of ADUs, including their prohibition in conjunction with duplexes, jeopardize the policy of allowing them in all residential zones. That prohibition is not inconsistent with the Bonney Lake Comprehensive Plan.

Kanany's claim of inconsistency with the Growth Management Act fails for the same reason. He argues that because the City's regulations are inconsistent with its comprehensive plan, they also violate the requirement of RCW 36.70A.040(3)(d), part of the Growth Management Act, that "each city . . . shall adopt a comprehensive plan under this chapter and development

15

regulations that are consistent with and implement the comprehensive plan." As just held, Kanany has not shown any inconsistency between the City's development regulations and its comprehensive plan. Therefore, he also has shown no violation of RCW 36.70A.040(3)(d).

D.    Motion to Amend Complaint

Kanany assigns error to the trial court's order granting the City's motion for leave to amend its complaint. Kanany argues that the trial court should have denied the City's motion because the City failed to join Navid to the lawsuit and, as a co-owner, Navid was a necessary and indispensable party.[7]

We require appellants to argue assignments of error with citations to authority and references to relevant parts of the record. RAP 10.3(a)(6). "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." *Joy v. Dep't of Labor & Indus.*, 170 Wn. App. 614, 629, 285 P.3d 187 (2012) (quoting *West v. Thurston County*, 168 Wn. App. 162, 275 P.3d 1200 (2012)), *review denied*, 176 Wn.2d 1021 (2013) (alteration omitted).

We do not consider Kanany's argument that the trial court erred when it granted the City leave to amend its complaint because he failed to provide sufficient argument or provide relevant

---

[7] Kanany argues also that the lack of necessary parties deprived the trial court of subject matter jurisdiction. This argument misunderstands the nature of subject matter jurisdiction. Washington superior courts have broad subject matter jurisdiction. *See* WASH. CONST. art. IV, § 6. The critical factor in determining whether a court has subject matter jurisdiction is the type of controversy. *Cole v. Harveyland, LLC*, 163 Wn. App. 199, 209, 258 P.3d 70 (2011). The superior court has original jurisdiction over all cases and proceedings in which jurisdiction has not been vested exclusively in some other court. WASH. CONST. art. IV, § 6; *Wimberly v. Caravello*, 136 Wn. App. 327, 333, 149 P.3d 402 (2006). Therefore, a court's jurisdiction does not depend on the presence or absence of a party. *Wimberly*, 136 Wn. App. at 334. Instead, failure to join affects only the court's authority over the absent party. *Wimberly*, 136 Wn. App. at 334.

16

authority sufficient to merit further judicial review. Accordingly, we do not address Kanany's arguments on this issue.

CONCLUSION

We affirm the trial court's decision.

BJORGEN, J.

We concur:

PENOYAR, J.P.T.

JOHANSON, C.J.