[No. 34808-0-II.    Division Two.    August 14, 2007.]

PAUL POST, *Appellant*, v. THE CITY OF TACOMA ET AL., *Respondents*.

*Everett A. Holum* (of *Everett Holum, PS*), for appellant.

*Elizabeth A. Pauli, City Attorney,* and *Debra E. Casparian, Assistant,* for respondents.

¶1 PENOYAR, J. — Paul Post owns numerous properties in Tacoma (Tacoma or City) that the City has designated as substandard or derelict. Beginning in 1999, the City assessed fines for several of these properties under Tacoma's Minimum Building and Structures Code. By 2005, Post owed the City and its collection agency nearly $400,000 in fines. Post sued, claiming that the fines were excessive, unconstitutional, and outside the City's statutory authority. The trial court granted summary judgment to the City, finding that (1) the City's actions were not abusive and excessive; (2) the ordinance did not effect an unconstitutional taking; (3) the daily fines did not constitute an unconstitutional deprivation of civil rights; (4) the penalties imposed did not exceed the City's statutory authority; (5) Tacoma Municipal Code (TMC) 2.01.060 does not violate constitutional protections against double jeopardy; and (6) Post failed to comply with the Land Use Petition Act's (LUPA), chapter 36.70C RCW, procedural requirements. Post appeals, assigning error to each of the trial court's

findings. Post's claim is barred by his failure to comply with LUPA's procedural requirements, and we need not address his other arguments. We affirm.

## FACTS

### I. TACOMA MINIMUM BUILDING AND STRUCTURES CODE ENFORCEMENT SCHEME

¶2 Chapter 2.01 TMC sets out the minimum standards for properties within City limits. TMC 2.01.030. Under the rules in this chapter, structures with specified problems accumulate points depending on the type of violation. TMC 2.01.060(B). Once a property has accumulated 50 points, it is classified as substandard. TMC 2.01.060(C), (D)(4)(a). If the building is substandard and has more serious problems, such as a lack of adequate ventilation, cracked foundation, inadequate electrical wiring or plumbing, or hazardous mechanical equipment, it will be classified as derelict. TMC 2.01.060(E)(1).

¶3 When a property has been evaluated and classified as substandard, Tacoma's code requires that the owner be notified of the violations and the appropriate actions to mitigate those violations. TMC 2.01.060(D)(4)(a). At that point, the owner has 30 days to respond to the letter and negotiate a schedule for correcting the violations. TMC 2.01.060(D)(4)(a). If the owner does not respond, the City will assess penalties ("intended to be only for remedial purposes") and send another letter notifying the owner of those penalties. TMC 2.01.060(D)(4)(b). Again, the owner is given 30 days to respond and negotiate a schedule to correct the violations. TMC 2.01.060(D)(4)(b). If the owner fails to respond, a second penalty is assessed and a third letter is sent to the owner. TMC 2.01.060(D)(4)(c). At this point, the owner has 14 days to respond and negotiate a schedule to correct the violations. TMC 2.01.060(D)(4)(c). Additional civil penalties may be assessed if the owner still fails to respond, and the City will send another letter to the owner describing those penalties. TMC 2.01.060(D)(4)(d). The

owner has seven days to respond to this fourth letter, and if *again* the owner fails to respond, the City will assess a civil penalty for every calendar day the owner does not respond. TMC 2.01.060(D)(4)(d)-(f). When the owner fails to respond and penalties accumulate in excess of $1,000, the City will file a complaint with the Pierce County auditor, to be attached to the property's title. TMC 2.01.060(D)(4)(f). A copy of the complaint is sent to the property owner and all tenants. TMC 2.01.060(D)(4)(f). "Once an enforcement action is undertaken, it shall be continued until all outstanding violations have been corrected." TMC 2.01.060(D)(5).

¶4 An owner may request administrative review of a notice of violation or civil penalty by filing a written request within 30 days of the notification date. TMC 2.01-.060(D)(6)(b). The building official will review the information provided and determine whether a violation occurred, and he will accordingly affirm, vacate, suspend, or modify the notice of violation or penalty assessed. TMC 2.01-.060(D)(6)(c). Either party may file an appeal with the hearing examiner within 30 days of receiving the building official's decision. TMC 2.01.060(D)(7). The hearing examiner will set a hearing and issue findings of fact and conclusions of law. TMC 2.01.060(D)(7).

¶5 The procedure for derelict buildings is slightly different. TMC 2.01.060(E). Derelict buildings are not to be occupied for any purpose until the owner has made repairs that eliminate the violations. TMC 2.01.060(E)(2). The owner must secure the building within 10 days of receiving the notice of violation. TMC 2.01.060(E)(3)(a). Additionally, the owner will receive only one notice of violation before civil penalties are assessed. TMC 2.01.060(E)(3)(b). The procedure for appeals to the building official and hearing examiner is the same as those for substandard buildings. TMC 2.01.060(E)(5)-(6).

II. Post's Violations and Procedural History

¶6 Post owns approximately 41 properties in Pierce County, with an assessed value of over $5.2 million. Since

1999, the City has had nuisance, substandard, and derelict building cases on as many as 24 of Post's properties. The City sent notices of violation for 22 properties in violation of the minimum standard, describing the violations and advising Post how to seek administrative review. Post did not respond to six of the initial notices but agreed to a work schedule for the others. Post failed to comply with the schedules, and the City first issued penalties on the substandard properties in the amount of $125 per property.

¶7 Post failed to timely appeal (in superior court) the notices of violation or the first penalty assessment for all properties except one.[1] The City points out that Post appealed on one property, but both the hearing examiner and the superior court affirmed the City's penalties. Post did not appeal the superior court ruling.

¶8 The City continued to inspect the properties and assess fines for those properties not in compliance. The City did not issue any new violations; all penalties imposed were directly related to the original violations.

¶9 The City imposed second, third, and fourth penalties according to TMC 2.01.060, and it then imposed penalties on consecutive work days. The City ultimately imposed penalties between $2,125 and $79,000 per property, depending on the extent of the violations.

¶10 By July 2005, Post owed the City $117,500 in penalties and $265,000 to the City's collection agency, and he still had 17 open cases against him. According to an affidavit from the City's collection agency, Post agreed to pay $50,000 monthly installments in September 2004, but he failed to follow through and instead paid only a total of $140,000.[2]

¶11 Post sued the City in Pierce County Superior Court in March 2005. He filed an amended complaint in December

---

[1] Post did appeal three other notices of violation and penalties to the building official, who affirmed the City each time.

[2] Post claims that he has paid approximately $300,000 in fines, but the pages he cites do not support this contention. We will not sift through the record to find support for an argument.

2005, requesting (1) an injunction to prohibit the City from attempting to collect the fines; (2) a declaratory judgment stating that TMC 2.01.060 effected an unconstitutional taking; and (3) damages for violations of the state and federal constitutions, as well as violations of his civil rights, breach of contract, and double jeopardy. The City counterclaimed to recover the $411,712.11 Post still owed.

¶12 Following an April 2006 hearing, the trial court granted summary judgment to the City. The trial court held that (1) the City's fines were not abusive and excessive in violation of state and federal constitutions, (2) the ordinance did not effect an unconstitutional taking, (3) the daily fines did not constitute an unconstitutional deprivation of civil rights under 42 U.S.C. § 1983, (4) the penalties imposed by TMC 2.01.060 do not exceed the authority granted under chapter 7.80 RCW, (5) TMC 2.01.060 does not violate constitutional protections against double jeopardy, and (6) Post did not comply with LUPA when he failed to file his complaint within 21 days of the issuance of the penalty assessment. Accordingly, the trial court dismissed the entirety of Post's complaint, and Post now appeals.[3]

## ANALYSIS

¶13 Summary judgment is rendered where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. CR 56(c). When reviewing an order for summary judgment, we engage in the same inquiry as the trial court. *Denaxas v. Sandstone Court of Bellevue, LLC*, 148 Wn.2d 654, 662, 63 P.3d 125 (2003). We review questions of law de novo. *James v. Kitsap County*, 154 Wn.2d 574, 580, 115 P.3d 286 (2005).

I. LUPA REQUIREMENTS

¶14 Post argues that the procedural requirements of LUPA do not apply in this case. Specifically, he claims that

---

[3] The City correctly points out that Post, in violation of RAP 10.3(a)(4), inserted several arguments into his statement of the case, including assertions that the inspectors were aggressive, that the system of fining is arbitrary, and that he was "at the mercy of the individual inspectors." Resp't's Br. at 4; Appellant's Br. at 11.

it is not applicable because (1) he originally sought monetary damages, and monetary damages are excluded under RCW 36.70C.030(1)(c); (2) the City has not claimed LUPA as authority for imposition of fines; (3) LUPA does not apply to interlocutory decisions; and (4) the City hearing examiner is a court of limited jurisdiction and "thus exempt from LUPA." Appellant's Br. at 35-39.

¶15 The City responds that Post's failure to comply with the jurisdictional requirements of LUPA bars all his claims. Specifically, the City contends that (1) the hearing examiner's final determination to impose penalties was a land use decision subject to LUPA, (2) Post failed to seek judicial review within LUPA's 21 day filing requirement, (3) Post's initial request for damages does not render LUPA inapplicable, (4) the hearing examiner is not a "court of limited jurisdiction," and (5) the notices of penalties were final determinations subject to LUPA. Resp't's Br. at 13-19. The City's arguments are persuasive.

¶16 LUPA is the exclusive means for judicial review of land use decisions made by a local jurisdiction. RCW 36.70C.040. However, a decision will not be reviewable under LUPA if the local jurisdiction is required to enforce the ordinances in a court of limited jurisdiction. RCW 36.70C.020(1)(c).

¶17 The first issue is whether the City's imposition of fines is a "land use decision" subject to the procedural requirements of LUPA. LUPA defines "land use decision" to include "enforcement by a local jurisdiction of ordinances regulating the . . . maintenance[ ] or use of real property." RCW 36.70C.020(1)(c). Here, the City imposed fines on Post's properties in order to enforce ordinances regulating the maintenance and use of real property. Therefore, the City's imposition of fines fits squarely within the statutory definition of "land use decision." In a somewhat analogous situation, where a municipal jurisdiction imposed a fee as a condition to issuing a building permit, the Washington Supreme Court recently held the decision to impose the fee was a "land use decision" within the meaning of LUPA and

therefore subject to its procedural requirements. *James*, 154 Wn.2d at 586. Additionally, Division Three recently held that a city's notice of violation to a party whose structural addition violated city ordinances was a land use decision subject to LUPA. *Richards v. City of Pullman*, 134 Wn. App. 876, 881, 142 P.3d 1121 (2006). LUPA's broad definition of "land use decision" clearly encompasses the City's decision to fine Post.

¶18 Next, we must examine whether the City's notice of violation and penalties were final determinations. Under LUPA, a land use decision must be a "final determination by a[n] . . . officer with the highest level of authority to make the determination, including those with authority to hear appeals." RCW 36.70C.020(1). Post seems to imply that the notices of violation and penalties were interim decisions. The City disagrees, pointing out that, under the penalty scheme set out in TCM 2.01.060, the hearing examiner's decisions are final unless they are appealed. The City's argument is persuasive—under Tacoma's enforcement scheme (see above), the hearing examiner is the officer with the highest level of authority to make the determination. Therefore, his decisions are final and within LUPA's jurisdiction.[4]

¶19 Next, we consider whether the City was required to enforce the ordinance in a court of limited jurisdiction. *See* RCW 36.70C.020(1)(c). Here, Post contends that the City's hearing examiner is such a court, but the City disagrees. The City is correct. First, Post offers no legal authority for his argument. We will not consider an issue that is insufficiently briefed or unsupported by legal authority. RAP 10.3(a)(5). Even if the court were to consider this argument, it fails. A court of limited jurisdiction is any court organized under Titles 3, 35, or 35A RCW. RCW

[4] In his reply, Post claims that the City admits that the notice of daily penalties "was not appealable to the hearings examiner." Reply Br. at 5. However, he offers no citation to support this. He also offers no authority for the contention that "[t]here is no question the [City] claims there is no appeal to the hearings examiner and therefore no decision may be made by the hearings examiner." Reply Br. at 6.

3.02.010. The hearing examiner is not a court organized under any of those titles, and is therefore not a court of limited jurisdiction.

¶20 A more troublesome issue, not initially briefed by the parties, is the effect of RCW 3.46.030, which by its terms appears to grant exclusive jurisdiction to claims arising under City ordinances to the Tacoma Municipal Court. *See City of Spokane v. Spokane County*, 158 Wn.2d 661, 681-83, 146 P.3d 893 (2006).

¶21 When interpreting a similar statute, RCW 35.20.030, the Washington Supreme Court held that the superior court had jurisdiction to hear a case where it was alleged that the city of Seattle was enforcing municipal traffic ordinances in violation of state law and state and federal constitutional protections. *Orwick v. City of Seattle*, 103 Wn.2d 249, 252, 692 P.2d 793 (1984). "[A] municipal court does not have exclusive original jurisdiction merely because the factual basis for a claim is related to enforcement of a municipal ordinance. The relevant consideration for determining jurisdiction is the nature of the cause of action and the relief sought." *Orwick*, 103 Wn.2d at 252.

¶22 Here, Post raises some claims, such as the amount of his fines, that may be subject to the exclusive jurisdiction of the municipal court. However, he also raises claims based on the state and federal constitutions. Under *Orwick*, these claims were subject to superior court jurisdiction.[5] Thus, the municipal court did not have exclusive jurisdiction over Post's claims; LUPA's exception does not apply because the City was not required to enforce the fines in a court of limited jurisdiction.

¶23 Finally, we consider whether Post's initial request for monetary damages bars LUPA's application in this case. RCW 36.70C.030(1)(c) provides that LUPA is not applicable to "[c]laims provided by any law for monetary damages or compensation." Here, Post did originally in-

---

[5] Even if, as Post contends, the nature of his claims mandates exclusive jurisdiction to municipal court, his complaint was therefore filed in the incorrect court and would have to be dismissed.

clude a request for damages in his complaint, but he concedes that "the cause for money damages was dismissed without prejudice." Clerk's Papers at 298-300; Appellant's Br. at 35.[6] The trial court's final order also indicates that all claims for damages were previously dismissed. Post has not appealed the dismissal of these claims, so they are not before us on review. *See* RAP 10.3(a)(4). The only claims relevant to the trial court's order (and this appeal) are Post's claims for injunctive and declaratory relief; LUPA is not barred.

¶24 LUPA is the exclusive means of judicial review of land use decisions, with certain enumerated exceptions. *James*, 154 Wn.2d at 583; RCW 36.70C.030(1). Because (1) the City's imposition of fines was a final land use decision and (2) Post has not established that any of the exceptions apply in this case, any appeal of the land use decision must comply with LUPA's procedural requirements.

¶25 Judicial review under LUPA is commenced by filing a land use petition in superior court within 21 days of the land use decision, and a land use petition is barred unless it is timely served and filed. RCW 36.70C.040(2)-(3). In order to have standing to bring a land use petition under LUPA, the petitioner must have exhausted his administrative remedies. RCW 36.70C.060(2)(d). In this case, Post did not file a land use petition within 21 days, nor did he exhaust his administrative remedies available under TMC 2.01.060. His claims are therefore barred, and we affirm the trial court's grant of summary judgment to the City.[7]

ARMSTRONG and HUNT, JJ., concur.

Review granted at 163 Wn.2d 1038 (2008).

---

[6] Post also indicates that there are no claims for damages before us later in his brief, where he states, "[t]he case at hand asks the court for a declaratory judgment that TMC 2.01.060 is invalid and an injunction from future enforcement of the ordinance." Appellant's Br. at 37.

[7] We are concerned that arbitrary and capricious action could be taken under TMC 2.01.060(D)(4)(e)-(f) and (5), which indicate that fines "may" be assessed every calendar day and that enforcement action continues until *all* outstanding violations have been corrected. For a property owner who has repaired most or nearly all of the reported deficiencies, it could be unreasonable to continue to impose the same amount of fine as initially imposed. Nevertheless, this is an issue

that Post could have raised in the administrative process or through a timely filed
LUPA petition.