217 P.3d 1179 (2009)
Paul W. POST, Petitioner,
v.
CITY OF TACOMA; City of Tacoma Department of Public Works, Building and Land Use Services Division; Risk Management Alternatives, Inc.; and Charles Solverson, Respondents.
No. 80684-5.
Supreme Court of Washington, En Banc.
Argued January 15, 2009.
Decided October 15, 2009.
*1181 Everett Allen Holum, Everett Holum PS, Tacoma, WA, for Petitioner.
Debra Ellen Casparian, Tacoma City Attorney's Office, Tacoma, WA, for Respondents.
J.M. JOHNSON, J.
¶ 1 The city of Tacoma's (Tacoma) building code enforcement department found many of Paul Post's properties were in violation of Tacoma's building codes and assessed hundreds of thousands of dollars in civil penalties. Post cooperated with Tacoma for some repairs but ultimately failed to bring all his properties into compliance. Post also sought to appeal many of the fines, but in most cases Tacoma denied a hearing. Post sued, seeking to bar Tacoma from enforcing its building code against him on numerous grounds, including that his rights to due process were violated. The trial court granted summary judgment for Tacoma on the merits. The Court of Appeals affirmed, holding that all Post's claims were barred because he failed to follow the procedures of the Land Use Petition Act (LUPA), chapter 36.70C RCW. We reverse, holding that LUPA does not bar Post's claims and the Tacoma code procedure violates due process.

FACTS AND PROCEDURAL HISTORY
¶ 2 This case comes before the court on cross motions for summary judgment. The material facts are complicated, but undisputed. Paul Post owns numerous properties located in Tacoma, many of which are rental properties. This action arises out of Tacoma's assessment of penalties against Post because 24 of his Tacoma properties were repeatedly found to violate city ordinances.
¶ 3 Tacoma regulates buildings through a Minimum Building and Structures Code (MBSC). Ch. 2.01, Tacoma Municipal Code (TMC). Under Tacoma's MBSC, structures are assigned points for various violations. If a structure accumulates 50 points total at any time, that property is classified as substandard. TMC 2.01.060.D.4. If such a building also has problems that are considered more serious, it may be deemed derelict and unfit for human occupancy. TMC 2.01.060.E.1. When a property has been classified as substandard or derelict, the MBSC requires that the owner be notified by letter of the violations and the actions to mitigate. TMC 2.01.060.D.4.a; ch. 2.01 TMC, tbl. A at 2-21 (providing for "Formal Notification of Infractions and Pending Penalties"). The owner has 30 days to respond to the letter and negotiate a schedule for correcting the violations. TMC 2.01.060.D.4.a. The owner may also seek administrative review of this initial notice of violation. TMC 2.01.060.D.6, E.5.
¶ 4 Owners are subject to civil penalties if they do not respond to the initial notice of violation or if violations are not corrected. TMC 2.01.060.D.4.b, E.3.b. The first fine is $125 per property; the second, third and fourth fines are $250 per property. TMC 2.01.060, tbl. F at 2-27. These fines are mandatory. TMC 2.01.060.D.4.b-e, E.3.b-e. The owner may seek administrative review of the first fine, but the MBSC makes no provision for review of any subsequent fines. TMC 2.01.060.D.6, E.5. After each additional fine is assessed, another notification letter is sent, providing decreasing amounts of time for the owner to respond. Id. If owners still fail to respond to letters or to negotiate a repair schedule after four fines are assessed, *1182 officials in the Building and Land Use Services Division have discretion to assess fines every calendar day. TMC 2.01.060.D.4.f, E.3.e. Unlike the first four fines, daily fines are not mandatory but may be imposed until the violations have been corrected. TMC 2.01.060.D.4.f, E.3.e. The MBSC contains no express procedure for administrative review of the later imposition of daily fines.
¶ 5 Post began purchasing property in Tacoma in the 1960s. Many of the properties were "run down." Clerk's Papers at 214. Post undertook to make some repairs over the years, even gutting and rebuilding some properties. But many other properties remained in disrepair, leading to complaints by neighbors.
¶ 6 In 1999, Tacoma inspected many of Post's properties and found 13 properties were substandard and 15 were derelict and uninhabitable. For one example, a single property was cited for pigeon infestation, missing smoke detectors, lack of heat in all habitable rooms, and defective exit stairs. Tacoma sent notice of violation letters for each property, notifying Post that the properties were either substandard or derelict. These letters described the violations and advised Post how to seek administrative review of the violation notice. Post was given 30 days to respond to the notices and to negotiate a schedule with Tacoma for correcting the problems.
¶ 7 For most of his noncompliant properties, Post responded to the notices by agreeing to work schedules. Repair schedules varied widely depending on the nature of the violations. For example, for one property Tacoma gave Post six months to paint the exterior, replace doors, and provide heat to bathrooms. However, Post did not respond to at least two of the notices of violation.
¶ 8 Post failed to comply with the agreed repair schedules for 17 properties. In response to Post's noncompliance, Tacoma began issuing civil penalties in the amount of $125 per property pursuant to TMC 2.01.060.D.4.b and E.3.b. The penalties were described in documents titled "Civil Infraction Penalty Assessment" that accompanied notice of violation letters describing 30 day appeal rights pursuant to TMC 2.01.060.D.6.b and E.5.b. Although Post occasionally sought administrative review of these notices of violation and fines, his appeals were always untimely, with one exception. Post's sole timely appeal was considered and rejected by a hearing examiner, and that ruling was affirmed on appeal.
¶ 9 Tacoma continued to inspect Post's noncompliant properties. Post was not fined for those properties that were being repaired on schedule. For others, where Post either had not responded to the notice of violation letters or did not agree to repair schedules, Tacoma imposed second, third, and fourth penalties of $250 per property.[1]
¶ 10 In 2000, Tacoma began imposing $250 penalties on some properties on a daily basis. Tacoma again provided notice of violation letters, similar to earlier letters, but not including information on appeal rights. Post attempted to appeal, but Tacoma denied the appeal as untimely, citing the MBSC's requirement that notices of violation or first penalties must be appealed within 30 days. By 2005, total accumulated penalties ranged from $4,000 to $84,000 per property, and Post claims he paid over $140,000 to Tacoma. Some of the past due amounts were referred to a collection agency.
¶ 11 Post instituted this action in Pierce County Superior Court, asking the court to declare the MBSC, the fining procedure, and the fines levied against him unconstitutional, and to enjoin enforcement of the MBSC against him.[2] Tacoma counterclaimed for $411,000 in unpaid penalties.
¶ 12 On cross motions for summary judgment, Pierce County Superior Court granted *1183 summary judgment in favor of Tacoma. The court held that Post failed to exhaust his administrative remedies under chapter 36.70C RCW (LUPA); that Tacoma's fines were not unconstitutionally excessive, did not constitute double jeopardy, did not violate Post's due process rights, and did not violate his civil rights under 42 U.S.C. § 1983; and that the penalties did not exceed Tacoma's authority under chapter 7.80 RCW. The court dismissed Post's damages claim and his amended complaint and granted Tacoma's summary judgment motion. Post appealed.
¶ 13 The Court of Appeals held that Tacoma's notice of violation and penalties were land use final determinations subject to the procedural requirements of LUPA, including a 21-day deadline for filing and serving; Post's initial request for monetary damages had been dismissed; and Post's remaining claims for injunctive and declaratory relief were barred by LUPA. See Post v. City of Tacoma, 140 Wash.App. 155, 165 P.3d 37 (2007). The Court of Appeals affirmed the trial court's grant of summary judgment without reaching the merits of Post's constitutional claims. Post filed a petition for review with this court, which was granted. Post v. City of Tacoma, 163 Wash.2d 1038, 187 P.3d 268 (2008).

STANDARD OF REVIEW
¶ 14 When reviewing an order of summary judgment, this court engages in the same inquiry as the trial court. Morin v. Harrell, 161 Wash.2d 226, 230, 164 P.3d 495 (2007). Summary judgment is rendered where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. CR 56(c). All facts and reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party. Biggers v. City of Bainbridge Island, 162 Wash.2d 683, 693, 169 P.3d 14 (2007). Statutory interpretation is a question of law that this court reviews de novo. In re Pers. Restraint of Cruz, 157 Wash.2d 83, 87, 134 P.3d 1166 (2006). The applicability of the constitutional due process guaranty is a question of law subject to de novo review. Wash. Indep. Tel. Ass'n v. Wash. Util. & Transp. Comm'n, 149 Wash.2d 17, 24, 65 P.3d 319 (2003).

ANALYSIS

A. LUPA's Application to Post's Claims

¶ 15 The threshold issue in this case is whether LUPA applies to Tacoma's notices of violations and assessments of penalties. Post did not comply with LUPA procedures, which include a 21-day deadline for filing. We hold that LUPA does not apply to bar these claims and, therefore, reach the merits of Post's claims.
¶ 16 Prior to enactment of LUPA, an aggrieved person could challenge a local jurisdiction's land use decision by petitioning for a writ of certiorari in the courts. Chelan County v. Nykreim, 146 Wash.2d 904, 916-17, 52 P.3d 1 (2002). The writ, originating in the common law, is both constitutional and statutory in Washington. See Const. art. IV, § 6; ch. 7.16 RCW. In 1995, the legislature enacted LUPA, chapter 36.70C RCW. The legislature's purpose was "to reform the process for judicial review of land use decisions made by local jurisdictions, by establishing uniform, expedited appeal procedures and uniform criteria for reviewing such decisions, in order to provide consistent, predictable, and timely judicial review."[3] RCW 36.70C.010; see also James v. Kitsap County, 154 Wash.2d 574, 115 P.3d 286 (2005) (surveying statute). LUPA procedures replaced only the writ of certiorari as the vehicle for appealing land use decisions.[4] RCW *1184 36.70C.030(1). Thus, LUPA applies only to actions that fall within the statutory definition of a land use decision.
¶ 17 "Land use decision" is defined under LUPA as a "final determination" by a local jurisdiction on one of three subjects:
(a) An application for a project permit...;
(b) An interpretative or declaratory decision regarding the application to a specific property of zoning or other ordinances or rules regulating the improvement, development, modification, maintenance, or use of real property; and
(c) The enforcement by a local jurisdiction of ordinances regulating the improvement, development, modification, maintenance, or use of real property. However, when a local jurisdiction is required by law to enforce the ordinances in a court of limited jurisdiction, a petition may not be brought under this chapter.

Former RCW 36.70C.020(1)(a)-(c) (1995) (emphasis added). We have previously held that land use decisions under LUPA include the granting of a special use permit, the granting of a building permit, the imposition of an impact fee as a condition on the issuance of a building permit and approval of a site-specific rezone. Habitat Watch v. Skagit County, 155 Wash.2d 397, 409, 120 P.3d 56 (2005) (special use permit); James, 154 Wash.2d at 584, 115 P.3d 286 (impact fees); Nykreim, 146 Wash.2d 904, 52 P.3d 1 (building permits); Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wash.2d 169, 4 P.3d 123 (2000) (site-specific rezone).
¶ 18 This court has never had the occasion to determine whether LUPA applies to a city's determination of violations and assessments of penalties. Our objective in interpreting a statute is to determine legislative intent. State v. Jacobs, 154 Wash.2d 596, 600-01, 115 P.3d 281 (2005). When statutory language is plain and unambiguous, the statute's meaning must be derived from the wording of the statute itself. Nykreim, 146 Wash.2d at 926, 52 P.3d 1. The "plain meaning" of a statutory provision is to be discerned from the ordinary meaning of the language at issue, as well as from the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole. Jacobs, 154 Wash.2d at 600-01, 115 P.3d 281. A reading that produces absurd results should be avoided, if possible, because we presume the legislature does not intend them. State v. Vela, 100 Wash.2d 636, 641, 673 P.2d 185 (1983).
¶ 19 Because LUPA does not authorize petitions on the subject of ordinances that must be enforced "in a court of limited jurisdiction," former RCW 36.70C.020(1)(c), we must determine whether the MBSC is such an ordinance. We hold that it is.[5] The MBSC provides for the issuance of notice of violation letters and the assessment and collection of civil penalties. These actions are elements of what chapter 7.80 RCW calls "a system of civil infractions."[6] In fact, the MBSC explicitly refers to violations as infractions.[7] And, the notice letters Tacoma sends to property owners designate violations of the ordinance as civil infractions. Thus, in both name and substance, violations of Tacoma's MBSC are civil infractions.
¶ 20 The authority of local jurisdictions to issue civil infraction notices and impose and enforce related penalties is governed by chapter 7.80 RCW.[8] This statute provides *1185 local jurisdictions two options for issuing and enforcing civil infractions. Under the default/judicial track, the entire civil infraction system is administered and supervised by the courts, from issuance of the notice to the collection of penalties.[9] Infraction jurisdiction resides exclusively in the district and municipal courts, i.e. courts of limited jurisdiction. RCW 7.80.010(1)-(4), .050(5) ("A notice of infraction shall be filed with a court having jurisdiction. ..."). The statute does provide that a local jurisdiction may enforce civil infractions "pursuant to its own system established by ordinance."[10] RCW 7.80.010(5). But, to the extent cities do not establish a system for hearing and determining infractions, the judicial track is by default the system authorized by law.
¶ 21 Tacoma's MBSC provides for a hearing to appeal only the first notice of violation and first civil penalty. However, Tacoma provides no process for hearing and determining subsequent infractions. Where the city has no such process, it cannot be said that it has "its own system," in the sense intended by the legislature in RCW 7.80.010(5). Such interpretation would allow Tacoma to impose unlimited punishment on civil defendants, a result that the legislature did not authorize. Absent its own complete system, Tacoma is required by chapter 7.80 RCW to follow the legislature's default system and enforce its infractions in courts of limited jurisdiction. LUPA does not apply when a local jurisdiction is required by law to enforce the ordinance at issue in a court of limited jurisdiction. Former RCW 36.70C.020(1)(c). Moreover, even when a claim pertains to a "land use decision," if the remedy sought is for money damages or compensation, as is the case here, that claim is "not subject to the procedures and standards, including deadlines" provided in chapter 36.70C RCW for review. RCW 36.70C.030(1)(c). Therefore, Post's claims with regard to all infractions and penalties are not barred by LUPA.

B. Procedural Due Process Claim

¶ 22 Post claims that the MBSC violates his due process rights because it provides for an appeal only of the initial notice of violation and first monetary penalty, and not any penalties assessed thereafter.[11] We agree.
¶ 23 Post argues that he ought to have an opportunity to be heard on each separate infraction, even if they are issued (i.e., penalties are being assessed) daily for the same violations. Tacoma objects that this would allow owners like Post to relitigate the same violations. Tacoma claims that all subsequent penalties following an initial violation are related enforcement actions and should not require separate opportunities to be heard.
¶ 24 Though the procedures may vary according to the interest at stake, the fundamental requirement of due process is *1186 the opportunity to be heard at a meaningful time and in a meaningful manner. Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). To determine whether existing procedures are adequate to protect the interest at stake, a court must consider the following three factors:
First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
Mathews, 424 U.S. at 335, 96 S.Ct. 893; Tellevik v. Real Property, 120 Wash.2d 68, 78, 838 P.2d 111 (1992) (adopting and applying the Mathews test).
¶ 25 The private interest Post seeks to vindicate is the right against the assessment of erroneous or excessive monetary penalties. The risk of erroneous deprivation is apparent. Tacoma asserts that every penalty was "related" to an initial determination of violation and that it assessed additional penalties only after reviewing each property for compliance. Although Post was provided an opportunity to be heard on the initial findings, he had no similar opportunity to bring potential errors to Tacoma's attention with regard to any subsequent findings or penalties. In other words, the addition of any procedural safeguards would provide exceedingly greater mitigation against the risk of erroneous deprivation, than no safeguards at all.
¶ 26 Building standards serve the important interests of protecting public safety, protecting property values, and preventing declining neighborhoods. And we recognize that municipal governments have a strong interest in the efficient administration and enforcement of their building codes. But Tacoma does not claim that providing an opportunity for Post to be heard on each separate infraction would be an overwhelming administrative burden. Rather, Tacoma complains that such hearings would give Post an opportunity to relitigate the underlying violations. This argument is misleading because Tacoma's determination to assess additional penalties is based on property conditions at the time of each determination. Nothing prevents Tacoma from limiting the scope of a hearing on additional infractions to the conditions of the property at the time it is found in violation, preventing the underlying violations from being relitigated. A notable illustration is when the owner has made some repairs  as Post did with many of his properties  but the inspector finds the property (still) noncompliant. Owners such as Post may be heard to contend that such repairs have brought the property into compliance, without being allowed to relitigate previous violations.
¶ 27 Where a local jurisdiction assesses civil penalties for noncriminal violations of law but provides no opportunity for civil defendants to be heard, the fundamental due process right to an opportunity to be heard at a meaningful time is violated. Because Tacoma has no procedures in place for civil defendants to appeal any but the first penalty, we need not speculate about what procedure might satisfy due process.[12] It is sufficient to hold that, where local jurisdictions issue infractions (finding violations and assessing penalties), there must be some express procedure available by which citizens may bring errors to the attention of their government and thereby guard against the erroneous deprivation of their interests.

CONCLUSION
¶ 28 The MBSC violates Post's procedural due process rights. The sections of the MBSC purporting to authorize the unlimited and unreviewable issuance and enforcement of subsequent civil infractions and penalties without any system of procedural safeguards are unconstitutional on their face and as applied to Post. Accordingly, we reverse the Court of Appeals decision and remand with *1187 instructions that summary judgment be entered for Post.
WE CONCUR: RICHARD B. SANDERS, TOM CHAMBERS, SUSAN OWENS and DEBRA L. STEPHENS, JJ.
ALEXANDER, C.J. (concurrence in result).
¶ 29 I agree with the result the majority reaches but write separately because I am of the view that this case could be resolved without addressing Paul Post's due process claims. I say that because it is apparent to me that the ordinance of the city of Tacoma that is before us runs afoul of article XI, section 11 of the state constitution, which permits a city to make and enforce only such "regulations as are not in conflict with general laws." Although a city may, pursuant to RCW 7.80.010(5), establish by ordinance a nonjudicial system to hear and determine civil infractions, that provision must be construed with reference to the entire chapter within which it is located. That chapter primarily deals with the handling of civil infractions in a judicial setting in a district or municipal court. Ch. 7.80 RCW. The Tacoma ordinance, which creates a nonjudicial system for assessing penalties for violations of the city's building code, lacks a key procedural protection that would be available to an individual charged with a building code infraction in a judicial setting, to wit, an opportunity for a hearing on each monetary penalty that is assessed. Thus, it
SANDERS, J. (concurring).
¶ 30 I also agree with Chief Justice Alexander's concurrence in result that Tacoma's local ordinance runs afoul of Washington State Constitution article IX, section 11, which permits a city to make and enforce only such "regulations as are not in conflict with general laws," and this one does conflict. See concurrence in result at 1. It is therefore invalid for this reason as well.
¶ 31 I therefore concur.
MADSEN, J. (dissenting).
¶ 32 Despite the circuitous reasoning engaged in by the majority, this case really presents a very straightforward application of the Land Use Petition Act (LUPA), chapter 36.70C RCW. LUPA governs review of final determinations of land use decisions. It is the "exclusive means of judicial review of land use decisions." RCW 36.70.030(1). A land use petition is barred unless it is filed "within twenty-one days of the issuance of the land use decision." RCW 36.70C.040(3); James v. Kitsap County, 154 Wash.2d 574, 583, 115 P.3d 286 (2005). Because Mr. Post failed to bring these claims within 21 days of the issuance of the land use decisions about which he complains, his claims are barred.
¶ 33 Ironically, it is the majority that creates the very due process problems that it believes constitute violations of petitioner Paul Post's constitutional rights, i.e., the lack of any procedures for appealing any but the first penalty. If the majority recognized, as it should, that the land use decisions made under the city of Tacoma's ordinance are properly subjected to timely LUPA review, LUPA's provisions would ensure prompt review of those penalties. Unfortunately, because Mr. Post failed to timely challenge any of the penalties through LUPA, and sat on his rights for months, and in some cases years, his due process claims are not properly before this court.

ANALYSIS
¶ 34 Mr. Post's claims are subject to LUPA because his claims arise from land use decisions. A "land use decision" subject to LUPA must be "a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination." Former RCW 36.70C.020(1) (1995).[1] Final land use decisions include decisions that relate to the enforcement of ordinances "regulating the improvement, development, modification, maintenance, or use of real property." Former RCW 36.70C.020(1)(c).[2] The fines that Mr. Post complains about were imposed by the city's *1188 Building and Land Use Services Division (Division) in an effort to enforce the Tacoma Minimum Building and Structures Code (Code) under the Tacoma Municipal Code (TMC), pertaining to minimum building standards for properties within the Tacoma city limits. The Division's decisions to impose the fines were land use decisions within the meaning of former RCW 36.70C.020(1)(c) because they related to enforcement of the code, in particular, to ensure that Post improve, modify, or maintain his buildings so as to bring them into compliance with the building code requirements.
¶ 35 Mr. Post argues, however, that the Division's decisions are not "final determinations" as defined by LUPA because the ordinance establishes that the officer with the highest level of authority to make decisions is a hearing officer and no hearing officer has made a final determination about the penalties imposed beyond the first one. He bases his argument on the fact that under the ordinance an owner may seek administrative review by the building official of the initial notice of violation and the first civil penalty. TMC 2.01.060(D)(6), (E)(5). The ordinance also provides for an appeal of the building official's decision to the hearing examiner within 30 days of the decision. TMC 2.01.060(D)(7), (E)(6).
¶ 36 However, while the hearing examiner is the officer with the highest level of authority to review these particular determinations, this is not true of other decisions under the ordinance. There is no review provided for any further penalties imposed by the Division. Therefore, as to any decisions other than the initial notice and the first penalty, the hearing examiner is not the officer with the highest level of authority to make the determination.
¶ 37 Instead, building inspection and assessment of the additional penalties authorized by the Code are carried out by the "building official," defined as the "Manager of the Building and Land Use Services Division of the Public Works Department of the City of Tacoma, charged with the administration and enforcement of the Building Code, or his or her duly authorized representative." TMC 2.01.050. Accordingly, as to any decision other than the first notice of violation and the first fine imposed, the building official is the officer with the highest level of authority to make the land use determination.
¶ 38 Because the decisions to impose the additional penalties are land use decisions involving final determinations by the official having the highest level of authority to make the determinations, Mr. Post's recourse for judicial review of the building official's decisions to impose the additional fines is under LUPA unless, pursuant to former RCW 36.70C.020(1)(c), the "local jurisdiction is required by law to enforce the ordinances in a court of limited jurisdiction." If this exception applies, Mr. Post's recourse would be through the appropriate court of limited jurisdiction.
¶ 39 But, the exception does not apply, contrary to the majority's conclusion, because the city of Tacoma's ordinance establishes it own system for enforcement. Under RCW 7.80.010(5), a city may establish a system for enforcement of civil infractions other than the judicial system set out in chapter 7.80 RCW. RCW 7.80.010(5) specifically provides that nothing in chapter 7.80 RCW "prevents any city, town, or county from hearing and determining civil infractions pursuant to its own system established by ordinance."
¶ 40 The city of Tacoma has established by ordinance a comprehensive system for hearing and determining civil infractions in relation to violations of its building code. Its system allows for inspection and determination of a violation by the building official, administrative review of the notice of first violation and imposition of the first fine, and appeal to a hearing examiner. It provides for inspection, determination of compliance/noncompliance, and imposition of any further penalties by the building official. While the city has not authorized administrative review of these latter decisions, it cannot seriously be doubted that the city of Tacoma has established what it believes to be an adequate system for enforcement of its code.
¶ 41 The exception in former RCW 36.70C.020(1)(c) does not apply. The court should hold that LUPA governs this case.
*1189 ¶ 42 LUPA's purpose "is to reform the process for judicial review of land use decisions made by local jurisdictions, by establishing uniform, expedited appeal procedures and uniform criteria for reviewing such decisions." RCW 36.70C.010. Relief may be granted under LUPA if the party seeking relief establishes that one of the standards in RCW 36.70C.130 has been met, among them that the land use decision violates the constitutional rights of the party seeking relief. RCW 36.70C.130(1)(f). The due process claims urged by Mr. Post and addressed by the majority are constitutional claims of a type that fall within LUPA's standards for granting relief.
¶ 43 The problem for Mr. Post is, however, that a land use petition under LUPA is barred and the court may not grant review unless it is filed within 21 days of issuance of the land use decision. RCW 36.70C.040(2), (3); Twin Bridge Marine Park, LLC v. State, 162 Wash.2d 825, 843, 175 P.3d 1050 (2008) ("[t]he crux of LUPA is that persons and agencies who oppose a final land use decision ... must appeal that decision within 21 days"). Mr. Post failed to file a timely petition under LUPA, and therefore all of his claims are barred.
¶ 44 I would affirm the trial court's grant of summary judgment on the ground that LUPA bars Mr. Post's claims because they were not timely filed.
¶ 45 The majority's decision to the contrary is seriously flawed for several reasons.
¶ 46 First, before deciding whether LUPA applies to decisions made in this case, the majority looks to former RCW 36.70C.020(1)(c) to decide whether the exception in this subsection applies to preclude a LUPA petition. Concluding that it does, the majority says that because the exception applies, it is unnecessary to decide whether the decisions to impose penalties are land use decisions within the meaning of LUPA. Majority at 1184 n. 5. However, as noted, former RCW 36.70C.020(1)(c) defines a particular type of land use decision within the scope of LUPA  "[t]he enforcement by a local jurisdiction of ordinances regulating the improvement, development, modification, maintenance, or use of real property." (Emphasis added.) After defining this type of land use decision, the subsection then provides that a LUPA petition cannot be filed if the jurisdiction must "enforce the ordinances in a court of limited jurisdiction." Id. (emphasis added).
¶ 47 Plainly, whether the exception applies first requires a determination that the decision at issue is the particular type of land use decision that is defined in former subsection (1)(c). If it is, then, and only then, must a court ask whether the exception applies. The statute does not permit applying the exception in former subsection (1)(c) unless there is first a determination that a land use decision as defined in the subsection is at issue.
¶ 48 The majority's analysis for deciding that the exception applies is equally confounding. The majority turns to chapter 7.80 RCW because this chapter establishes a system of civil infractions. Civil infractions may be subject to enforcement in courts of limited jurisdiction or, as mentioned above, a city can choose to hear and determine civil infractions pursuant to its own system established by ordinance. RCW 7.80.010(5). The majority says that the city of Tacoma set up its own system with regard to the first notice of violation and the first penalty imposed under TMC 2.01.060. However, because the ordinance does not provide for review of any further decisions to impose penalties, the majority concludes the city has not set up a "complete" system with regard to such decisions and therefore the "default" applies under chapter 7.80 RCW. That is, these penalties must be subject to enforcement in a court of limited jurisdiction.
¶ 49 But as explained, in fact the city did establish its own system by ordinance  it is simply a system that does not allow for administrative review of the additional penalties.
¶ 50 Of critical importance is the principle that whether this system is constitutional is a separate question from whether the city of Tacoma established by ordinance its own system of hearing and determining civil infractions. The former question involving the constitutionality of the procedure (and imposition *1190 of fines under the system) is exactly the kind of question that is subject to LUPA review under RCW 36.70C.130(1)(f), as mentioned. But whether the system the city has established by ordinance is valid does not justify any interference in the city of Tacoma's exercise of its legislative authority. The city, not the majority, has the power to establish its own system of enforcement by ordinance.
¶ 51 Moreover, the majority cites absolutely nothing that justifies its usurping the city's power to choose whether to establish an administrative enforcement scheme or resort to a judicial enforcement scheme in courts of limited jurisdiction. The city of Tacoma plainly elected to establish an administrative system, not a judicial system.
The majority refers to the Seattle Municipal Code (SMC) as containing a "similar" building standards code that provides for judicial enforcement of civil infractions. But the Seattle ordinance specifically states that civil enforcement actions are to "be brought exclusively in Seattle Municipal Court, except as otherwise required by law or court rule." SMC 22.206.280(G). The city of Tacoma, in contrast, has specifically provided for nonjudicial enforcement of its ordinance. The substantive provisions of the two cities' codes may be "similar" insofar as both concern enforcement of building codes, but they are dissimilar in terms of the enforcement mechanisms adopted. The system established by the city of Tacoma may not be to the majority's liking, but the city of Tacoma, unlike the city of Seattle, has elected its own system of enforcement by ordinance.
¶ 52 The majority, not the city, has created limited jurisdiction court review. The majority's action flies in the face of the city's manifest intent to establish its own system by ordinance. It is an egregious violation of the separation of powers doctrine, a grievous usurpation of the city's authority, and an exercise of authority this court does not enjoy.
¶ 53 The majority is flawed in another respect. It correctly states, majority at 1182 n. 2, that although Post initially sought reimbursement of his fines and monetary damages, those claims were dismissed or abandoned by Post. Then the majority says, inconsistently, that LUPA does not apply even as to the first notice of violation and the first penalty because "[c]laims provided by any law for monetary damages or compensation" are not subject to LUPA. RCW 36.70C.030(1)(c); majority at 1185. But there are no claims for monetary damages or compensation at issue.
¶ 54 Next is perhaps the most perplexing part of the majority's confusing analysis. Having just concluded that the city of Tacoma's enforcement system is in fact a bifurcated system with part established by ordinance and the rest a "default judicial system" under chapter 7.80 RCW, the majority then analyzes the due process challenge without regard to these statutes. It agrees with Post that his due process rights were violated because there is no way to appeal penalties assessed after the initial notice of violation and the first monetary penalty. Majority at 1185.
¶ 55 The majority cannot have it both ways. Either enforcement is through the system the City of Tacoma actually established, without an administrative appeal for the additional penalties but with recourse to superior court under LUPA, or, under the majority-created system, partial enforcement is through a court of limited jurisdiction and governed by chapter 7.80 RCW, in which case appeal is provided for under this chapter. See RCW 7.80.080(3)-(4) (providing for hearings for persons who wish to contest the determination of having committed a civil infraction or who wish to explain mitigating circumstances); RCW 7.80.100 (describing procedures for hearing, including the right to present evidence and examine witnesses with provision for subpoenaing enforcement officer who issued the notice of civil infraction; providing for appeal to superior court).
¶ 56 Finally, although the majority believes that accepting the city's ordinance for what it allows  administrative appeal only as to the first notice of violation and first penalty  "would allow Tacoma to impose unlimited punishment on civil defendants" without any recourse, majority at 1185, this would not be *1191 true if LUPA is properly invoked to challenge the penalties.

CONCLUSION
¶ 57 The majority goes to extraordinary lengths to avoid the straightforward answer to Mr. Post's claims. The decisions about which he complains are land use decisions subject to LUPA. His failure to timely file under LUPA precludes review of his claims.[3]
¶ 58 I dissent.
WE CONCUR: CHARLES W. JOHNSON and MARY E. FAIRHURST, JJ.
NOTES
[1] Additionally, Post asserts that when total penalties on a property reached $1,000, Tacoma filed a certificate of complaint with the county auditor to be attached to the title of the property, as required by the MBSC. Post asserts that these certificates act as liens and prevent him from selling or refinancing the properties
[2] Post also sought reimbursement of his fines and monetary damages. Those claims were either dismissed by the trial court or abandoned by Post prior to appeal. Post asserts he has refiled his damages claim under a separate cause of action.
[3] We recently noted that applying LUPA is consistent with our policy of favoring finality in land use decisions. Twin Bridge Marine Park, LLC v. State, 162 Wash.2d 825, 843, 175 P.3d 1050 (2008). That policy applies in the enforcement context. See Samuel's Furniture, Inc. v. Dep't of Ecology, 147 Wash.2d 440, 457, 54 P.3d 1194 (2002).
[4] The statute provides exceptions for:

(a) Judicial review of:
(i) Land use decisions made by bodies that are not part of a local jurisdiction;
(ii) Land use decisions of a local jurisdiction that are subject to review by a quasi-judicial body created by state law, ...;
(b) Judicial review of applications for a writ of mandamus or prohibition; or
(c) Claims provided by any law for monetary damages or compensation. ...
RCW 36.70C.030(1). Post originally made a claim for damages but abandoned it prior to appeal. See supra note 2.
[5] Accordingly, it is not necessary to decide whether Tacoma's actions were "land use decisions" within the meaning of LUPA. See RCW 36.70C.020(1)(a)-(b).
[6] Similarly, this court defines infractions as "noncriminal violations of law defined by statute (or ordinance)." Wash. Infraction Rules for Courts of Limited Jurisdiction (IRLJ) 1.1(a), 1.2(i).
[7] See ch. 2.01 RCW, tbl. A at 2-21 (providing for "Formal Notification of Infractions and Pending Penalties").
[8] Although the legislature enacted chapter 7.80 RCW to decriminalize various violations of law then classified as misdemeanors, its scope is broad and includes all violations of local law and ordinances designated as civil infractions. See RCW 7.80.005, .010(1). As noted above, Tacoma's MBSC and Tacoma's own correspondence designate violations of the ordinance as civil infractions. Not coincidentally, many other Tacoma ordinances explicitly incorporate or refer to chapter 7.80 RCW and other statutes governing infractions. See, e.g., TMC 3.12.060.C.2 (cross-referencing chapter 7.80 RCW); TMC 4.15.020,.040 (adopting by reference RCW 77.15.060 and 79A.60.020, which cross-reference infraction infraction scheme in chapter 7.84 RCW); TMC 5.16.080.A.1 (incorporating traffic infraction rules of chapter 46.63 RCW); TMC 8.27.030 (incorporating definition of civil infraction from chapter 7.80 RCW); TMC 8.29.060.E (referencing chapter 7.80 RCW).
[9] See RCW 7.80.080 (notice of civil infraction must be filed in court; response to notice of infraction must be sent to court; penalties must be paid to court clerk; court must enter order recording defendant's response; court assesses the penalty). For a similar building standards code that provides for judicial enforcement of civil infractions, see SMC 22.206.280(G) and.315 (building code enforcement actions must be brought in Seattle Municipal Court). The Seattle code also provides for special assessments and liens on property, see SMC 22.208.100, .110, which must also be judicially enforced. See, e.g., ch. 82.32 RCW.
[10] This arrangement is reflected in the infractions rules promulgated by this court. See IRLJ 2.3 (except as otherwise specifically provided by statute or ordinance, an infraction case shall be brought in the district court district or the municipality where the infraction occurred).
[11] Post also argues that the MBSC's penalty provisions exceed Tacoma's statutory authority under RCW 7.80.120, that the MBSC's penalty provisions violate the excessive fines clause, and that the accumulation of penalties violates substantive due process. Because we grant summary judgment for Post on the procedural due process issue, we do not address Post's other claims.
[12] We note that Washington's largest municipality has opted to follow the judicial track of chapter 7.80 RCW. SMC 22.206.280(G), .315 (building standards enforcement actions must be brought in Seattle Municipal Court).
[1] Now codified at RCW 36.70C.020(2).
[2] Now codified at RCW 36.70C.020(2)(c).
[3] The posture of this case does not legitimately permit analysis of the due process claims raised by Mr. Post. I therefore do not address the question whether, in addition to LUPA review, the city must provide for administrative appeal of the penalties imposed after the first penalty.